ANDREW LAWRENCE, COMPLAINANT AND APPELLANT, *v.* HIRAM A. TUCKER.

Where a mortgage was given to secure the payment of a note for $5,500, and such advances as there had been or might be made within two years, not to exceed in all an indebtment of six thousand dollars, and advances were made the mortgage was good to cover the advances and the note for $5,500.

The parties to the transaction so understood it, and acted upon it accordingly.

In respect to the validity of mortgages for existing debts and future advances, there can be no doubt. This court has made three decisions directly and inferentially in support of them.

THIS was an appeal from the Circuit Court of the United States for the northern district of Illinois.

The nature of the mortgage and the circumstances under which it was given are set forth in the opinion of the court, and need not be repeated.

The cause was submitted on printed argument by *Mr. B. R. Curtis* for the appellant, and argued by *Mr. Vinton,* upon a brief filed by himself and *Mr. Hayne,* for the appellee.

*Mr. Curt s,* after giving a narrative of the facts in the case, and contending that the answer did not allege nor was there any evidence tending to prove that the complainant, who was thus admitted to be a bona fide purchaser for a valuable consideration, had any notice of any lien upon this property save what he gathered from the record of the mortgage to the respondent, made the following points:

1. H. A. Tucker, individually, cannot set up this note against a subsequent encumbrance, as intended to cover future advances.

It is true that a mortgage may be taken to secure future advances; and perhaps, where no fraud is intended, a note for a sum of money may be given in consideration of such expected advances; though the policy of allowing such departures from strict truth on the public registries of the country is extremely questionable. But this mortgage, in effect, asserts that the note is not to stand for future advances. For it makes a specific and distinct provision for future advances, and expressly, and clearly distinguishes between them and the note, which is, in so many words, declared not to have been given for future advances, but for that amount of money already due.

If H. A. Tucker, individually, had actually made advances subsequent to the mortgage, he could not have a lien by virtue of it, to secure advances, by himself and his firm, beyond the

amount of $6,000, without being allowed to contradict the express and clear terms of the deed, which limits the future advances to that sum.

But he has advanced nothing. And the question is, whether a mortgage to one partner, purporting to secure a debt due to him individually, can, as against a bona fide purchaser, without notice of any parol understanding between mortgagor and mortgagee, be set up as a security for advances made by the firm of which he is a member.

2. The mortgage expressly declaring that it was to stand as security for future advances only to the extent of six thousand dollars, it cannot stand as security for any greater amount of such advances, as against a junior encumbrancer, who has no notice of any parol agreement between the mortgagor and mortgagee, that it shall stand as security for a greater sum.

The public registry informed the complainant that future advances were not to exceed $6,000; that the note was not given for future advances to be made by any one, but for money then due; that the note had reference to dealings between H. A. Tucker, individually, and the mortgagors, and not between the mortgagors and the firm of H. A. Tucker & Co.

A decree allowing H. A. Tucker to set up the mortgage as security for $9,689.56 of advances made by his firm, contradicts each of these material representations, on which the complainant had a right to rely when he purchased the property.

3. Upon the face of the mortgage and the whole evidence, it is not made out with the requisite certainty that there was an original agreement between the mortgagors and the mortgagees, that the $5,500 note should stand as a continuing security for all future advances; and when advances to that amount had been made and repaid, that part of the security, if ever applicable to advances, was extinguished.

Truscott et al. v. King, 2 Seld., 147.

4. This mortgage to H. A. Tucker, to secure future advances by the firm of H. A. Tucker & Co., cannot stand as

security for advances made after the admission of new partners into the firm. As against the mortgagors, their conduct and understanding may prevent them from taking this objection. But a junior encumbrancer is affected only by the precise terms of the mortgage itself, which provides only for advances to be made by the then firm of H. A. Tucker & Co. Either the admission or retirement of a partner puts an end to the right to make further advances upon the credit of the security, as against the junior encumbrancer, and, if the amount due at the time of such change of the firm is afterwards balanced by payments on account, nothing remains due on the mortgage:

Bank of Scotland *v.* Christie, 8 Cl. and Fin., 214

Spiers *v.* Houston, 4 Bligh. N. S., 515.

Pemberton *v.* Oaks, 4 Russell's R., 154.

Cremer *v.* Higginson, 1 Mason, 323.

Simpson *v.* Cook, 1 Bing., 452, 441.

There are cases in which it has been held that the security continues, though new partners are introduced into the firm. But this was only as against the debtor, or his assignees in bankruptcy, who have only his rights, and by force of an agreement by the mortgagors to extend the operation of the security to the new firm.

Without such agreement, which binds only the debtor and his representatives, there is believed to be no case which holds that the right to make advances on the credit of the security continues after a change in the members of the firm.

See Ex parte, Oakes, 2 M. D. and De G., 234.

Ex parte, Marsh, 2 Rose, 239.

If there was such an agreement in this case, the complainant had no notice of it, and is not bound by it.

The firm of H. A. Tucker & Co. was changed by the admission of new partners, January 1, 1857, and all advances made previous to that date have been repaid.

*Mr. Vinton* replied to these points as follows:

*Question* 1. The first question that arises in this case is, what was the mortgage to Tucker intended to secure?

We claim that it was intended to secure any indebtedness that might arise in the manner specified therein, to an amount not exceeding, at any one time, the sum of eleven thousand five hundred dollars; and that the actual knowledge of defendant's claim by the subsequent encumbrancers, and by Lawrence, the purchaser, made them chargeable with what was in fact due on the mortgage, not exceeding that sum, as the only condition on which they or any of them would be allowed to redeem the property. In other words, they can only redeem subject to the satisfaction of Tucker's prior equity, whatever that may be.

*Question* 2. May a mortgage be taken as a security for future advances, and be a lien on the property to the extent of the sum or sums provided for in it?

The cases which affirm the doctrine that a mortgage may be given to secure future advances, or future liabilities, are very numerous.

Shirras *v.* Caig, 7 Cranch, 34; Leeds *v.* Cameron, 3 Sumner, 492; Lyle *v.* Ducomb, 5 Binney, 590; Collins *v.* Carlisle, 13 Illinois, 256—are some of the leading American cases on this head.

In Leeds *v.* Cameron, Judge Story said: "Nothing can be more clear, both upon principle and authority, than that, at the common law, a mortgage bona fide made may be for future advances and liabilities for the mortgagor by the mortgagee, as well as for present debts and liabilities." He cites 3 Cranch, 73; 1 Pet. Rep., 448.

There are cases which question the prior lien of the first mortgage for future advances made after a second mortgage has been given; but in this case no such question arises, as all the advances were made before the execution of either of the subsequent mortgages.

The advances covered by the first mortgage having been made prior to a subsequent lien, and prior to complainant's purchase, it could make no difference, nor work any injury to the subsequent encumbrancers, nor to the complainant as purchaser, that at times during the continuance of the dealing under the first mortgage there was actually due less than the

*Lawrence* v. *Tucker.*

whole amount secured by it, or, if such were the fact, that there was no indebtedness or balance due; and they cannot avail themselves of that objection, because, during the continuance of the dealing, the mortgage and note for $5,500 were treated as and understood by the parties to be a continuing security for whatever advances might be made during the two years the contract was to last. And neither subsequent encumbrancers nor purchasers could suffer any prejudice, if due inquiry were made, from a mortgage, the record of which was notice to all persons of an encumbrance to the extent of eleven thousand five hundred dollars. They were interested in knowing what was in fact due when the subsequent encumbrance was taken, and when the subsequent purchase was made, and they were interested no further.

The note for $5,500 states on its face that it was given for an actual loan of money, and consequently the mortgage, to the extent of that note, appears to have been given to secure a debt then due, and this presents the question :

*Question* 3. Whether parol evidence can be given to show that the note and mortgage were taken as a collateral security for advances thereafter to be made, and that in fact such advances were subsequently made, on the faith of that security?

As between the parties to the mortgage, there can be no question but such proof would be let in. Indeed, it is one of the most ancient principles of a court of equity, that if a deed be absolute on its face, it may be proved by parol, in a court of equity, that it was a conditional conveyance given to secure a loan of money.

Whether such proof will be let in against third persons will depend upon the fact whether the mis-statement or misrepresentation in the deed was made for a dishonest purpose, and whether such third person has been deceived or injured by it. This objection was made in the case of Shirras v. Caig, (2 Pet. Cond. Rep., 410.) Judge Marshall said : "It is true the real transaction does not appear on the face of the mortgage. The deed purports to secure a debt of thirty thousand pounds sterling, due to all the mortgagees. It was really intended to secure different sums due at the time to particular mortgagees.

advances afterwards to be made, and liabilities to be incurred to an uncertain amount."

After remarking that misrepresentations of a transaction are liable to suspicion, he says: "But if, upon investigation, the real transaction shall appear to be fair, though somewhat variant from that which is described, it would seem to be unjust and unprecedented to deprive the person claiming under the deed of his real equitable rights, unless it be in favor of a person who has been in fact injured and deceived by the misrepresentation. That cannot have happened in the present case."

The same may be said of the case now in hand; the misrepresentation in Tucker's mortgage, if it may be called such, has neither injured nor deceived the subsequent encumbrancers nor the purchaser under them, nor was it made for an unfair or dishonest purpose. If the complainant could prove any of these facts, he had the right and an opportunity to do it. And they are not to be presumed in the absence of proof.

*Question* 4. Judge Curtis, in his brief, has raised the question, whether the mortgage can stand as a security for advances made by the firm of H. A. Tucker & Co., after the admission of new partners into that concern.

The complainant comes into court asking for equity, and praying that the defendant's legal title to the property mortgaged may be taken from him by a decree of the court. That being his attitude, he will not be likely to meet with much encouragement in setting up technicalities to deprive the defendant of his honest rights.

It ought here to be borne in mind, that all the securities claimed to be now due, with one exception, are notes of hand given by Floyd & French, payable to the order of H. A. Tucker alone, and consequently within the precise letter of the mortgage. The demand note of the 18th of December, 1857, for $2,000, is made payable to H. A. Tucker & Co.

If H. A. Tucker raised money through the firm of H. A. Tucker & Co., for Floyd & French, and took their notes for it, payable to himself personally, thus bringing the transaction within the precise letter of the mortgage, who, it may be

asked, has a right to complain of that? Was this dishonest or unfair?

This fact would seem to dispose of this objection to all the claims except the $2,000 note. And what, it may well be asked, is the equity or justice of the objection to that note?

In January, 1857, two new partners were brought into the firm of H. A. Tucker & Co. But the stipulation respecting this fact, at page 34 of the record, shows that no new capital was brought into the concern. No change was made in the name of the firm; all the old accounts, and that of Floyd & French among the rest, were carried forward without any change. Tucker retained in his own hands the exclusive right to manage and control the affairs of the concern, and to sign the partnership name; it was in fact his concern. Floyd & French continued to get advances as before, with the understanding by both parties that they were made on the faith of the mortgage.

This understanding and this course of dealing could work no injury to subsequent encumbrancers, because they then had no mortgage or claim on the property, nor is it pretended they were misled or deceived by it to their injury.

Lyle *v.* Ducomb (5 Binney, 590) was a case where defendant Ducomb gave a bond for $18,000, conditioned to pay $9,000, with a mortgage on real estate. By an endorsement on the mortgage, it was stated that it was made to secure the plaintiff for notes drawn and to be drawn by him, and by Lyle and Newman, for Ducomb's accommodation.

Objection was made, that a mortgage intended as an indemnity against acts to be performed at a subsequent time, ought not to have any effect against third persons.

Tilghman (Justice) said: "This point was very properly abandoned. There cannot be a more fair, *bona fide*, and valuable consideration, than the drawing and endorsing of notes at a future period, for the benefit and at the request of the mortgagor, and nothing is more reasonable than the providing a sufficient indemnity beforehand."

In that case, six months after the making of the mortgage, and after a builder's lien had attached to the property, the

mortgagor and mortgagee entered into an agreement, that a description of notes not before embraced by the mortgage, and made by a different drawer than the drawers named in the mortgage, should be embraced therein. Held, that the parties had a right to make such agreement, as between themselves, and that it was also good as to third parties, who were intervening encumbrancers, if the amount of the mortgage encumbrance were not thereby increased beyond the amount which the mortgage was intended to secure.

   5 Binney, 589.

This doctrine would seem to dispose of the objection we are now considering. In the case of the Commercial Bank *v.* Cunningham, (24 Pick., 270,) the mortgagors, who were a firm under the name of Edgarton, Whitecomb, & Co., made a mortgage to secure their existing debts, and also future debts they might owe mortgagees; and afterwards mortgagors admitted a new partner into the firm, which assumed a new name. Held, that notes given by the new firm were covered and secured by the mortgage.

In conclusion, we think it may be safely affirmed, that upon no known principle of equity can the defendant be deprived of his legal and equitable lien upon the property mortgaged to him, until he is paid the full amount equitably covered by the mortgage, and due to him and to the other parties named in the deed. In other words, the complainant himself must do what is equitable, as the sole condition on which he can claim to redeem and obtain possession of the property discharged of the defendant's lien.

Mr. Justice WAYNE delivered the opinion of the court.

We have been unable to find anything in this record to authorize us to change or modify the decree made by the Circuit Court in this case.

Andrew Lawrence filed his bill in that court, for the northern district of Illinois, against Hiram A. Tucker, to redeem the furniture of a hotel in the city of Chicago, called the Briggs House, upon which Tucker has a mortgage.

On the 1st of September, 1856, John J. Floyd and George

H. French, who then were the keepers of that hotel, wishing to have a current business credit with Tucker and the firm of H. A. Tucker & Co., and the bank named in the mortgage, executed, under the name and firm of Floyd & French, to Hiram A. Tucker, a mortgage of the furniture of the hotel, to secure a note of Floyd & French, made to Tucker, for $5,500, and such advances of money as there had been or might be made within two years, by H. A. Tucker, H. A. Tucker & Co., or the Exchange Bank of H. A. Tucker & Co., not to exceed in all an indebtment of six thousand dollars in addition to the sum for which their note was given. The note was dated on the 1st of September, the day on which the mortgage was made, payable one day after date, with interest at the rate of ten per cent. per annum. The note was to be held by Tucker, as a collateral security for such advances as have just been stated, and the amount of the note also. Under this arrangement, successive advances were made to Floyd & French, on their checks or by discount of their notes, until some time in October, 1857, when they ceased.

Tucker, during this time, continued to hold the note for $5,500. He also held several other promissory notes of Floyd & French, as appears by the exhibits, C, D, E, G, H, annexed to Tucker's answer to the complainant's bill. All of these notes, except that for $2,000, are drawn payable to H. A. Tucker; all of them are prior in dates to other mortgages upon the same furniture, except the note just mentioned for $2,000, and that was a renewal of a note for a loan made on the 26th September, 1857, prior to the date of the mortgages made to Briggs & Atkyns. The mortgage to Briggs was made on the 19th November, 1857, by Floyd & French, and one Ames, who had been taken into their firm. It was given to secure debts due to Briggs, and liabilities he had assumed for them, and also for such advances of money as Briggs might thereafter make to them, with a power of sale on default. When Briggs took this mortgage, he knew that Tucker had a prior mortgage on the same furniture, and he states in his evidence that he knew advances of money had been made upon it by Tucker, for which he knew it stood as a security.

On the 12th of January, 1858, Floyd & French and Ames made a third mortgage of the same property to Henry Atkyns, as trustee, with a like power of sale, to secure debts mentioned in it. Both of these mortgages refer to Tucker's mortgage as an existing encumbrance upon the furniture, &c., &c. Briggs and Atkyns had then, of course, notice of Tucker's mortgage.

Atkyns sold the furniture under his power of sale on the 27th February, 1858; Briggs sold under his power of sale on the 12th March following. Lawrence became the purchaser at both sales. Briggs sold to him expressly subject to the mortgage of French & Floyd to H. A. Tucker; and Lawrence admits, by a stipulation in the record, that when he purchased the property under the mortgages, he had notice that either the defendant Hiram A. Tucker or H. A. Tucker & Co. held the notes against Floyd & French, as they are set forth in the defendant's answer, and that the amount was claimed to be due upon them, as it is set out in the answer.

Upon referring to that answer, and its exhibits, C, D, E, G, H, we find that the only securities now claimed to be due are, with one exception, notes of hand given by Floyd & French, payable to the order of H. A. Tucker alone, precisely within the mortgage, and that the note of December 18th, 1857, payable to H. A. Tucker & Co., for the sum of two thousand dollars, payable at the counting-house of H. A. Tucker & Co., in Chicago, was for an actual loan of money, and that it was the renewal of a former note for the same sum, dated the 26th September, 1857.

We have, then, the admission of the complainant, that when he purchased under the mortgages of Briggs & Atkyns, he knew the particular items constituting the outstanding unpaid debt of Floyd & French to Hiram A. Tucker and H. A. Tucker & Co. for advances. One of these notes, dated the 14th October, 1857, was for $1,000, exhibit C; another, dated 22d October, 1857, exhibit D, was for $3,000; the third, exhibit E, dated July 11, was for $450; exhibit G, of the same date, was a note for the sum of $5,000; and exhibit H, dated the 18th December, 1857, was for $2,000.

Floyd, who did the financial business of the firm of Floyd

& French, testifies that the notes just mentioned were given for advances; but he claims a credit of $1,500 on the note, exhibit D; and states that the note for $450, exhibit E, had not been given for money advanced, but that it and another note for the same amount were given for the interest for one year on the note for $5,500  Floyd also states that the note marked exhibit I, for $5,500, was signed by himself when he signed the mortgage, and that he personally made the negotiation with H. A. Tucker & Co.

It is further stated by him, that the aggregate amount of all the advances which had been made by the defendant to his firm upon the faith of the note and the mortgage, since the first of September, 1856, amounted to "from fifty to a hundred thousand dollars," and that the sum now remaining due was "somewhere in the vicinity of ten thousand dollars." He verifies the notes named in the exhibits, C, D, E, G, H, with the originals; confirms the statement in exhibit A of the discounts which his firm had received under the note and mortgage; and adds, that when the note and mortgage were given, his firm then owed to H. A. Tucker & Co. twenty-five hundred dollars, which was paid on the 7th September, 1856; and repeats in his cross-examination what he had said in his examination in chief, concerning the amount of the discounts and cash received from H. A. Tucker & Co. under the note and mortgage.

It must have been upon the testimony of this witness that the court below gave its decree.

But we have not referred to it with the view of testing the correctness of the sum allowed to the defendant, as the condition upon which the complainant might redeem the mortgage—though, having made the computation, we find it to be correct, with a small mistake. Our object has been to show that the parties to the original transaction understood it alike, and acted upon it accordingly; that there never was a difference between them, as to the character of the mortgage and its purpose; and that it was intended to be a security for and a lien upon the property mortgaged for future advances, to the extent of the sum provided for in it. So also Floyd &

French represented it to be in their transactions with others, when they found it convenient to their business to give other mortgages upon the same property for the security of other creditors.

We consider it to be a mortgage for future advances, that they were subsequently made in conformity with its provisions, and that the proofs that they were so, were rightly received by the court below to substantiate them. There is neither indirectness nor uncertainty in the terms used in the mortgage, to make it doubtful that it was intended to cover the note for $5,500 and for future advances. It is stated in terms that it was intended for that purpose. The note, though expressed to be an existing indebtedness at the date of the mortgage, secured to be paid by a promissory note, payable one day after date, is associated with the advances to be made to Floyd & French to the amount of $6,000; but it is proved that the note and mortgage were in fact taken as a security for advances thereafter to be made, and that it was done without any other purpose than to get a credit extended to them of eleven thousand five hundred dollars, instead of advances only to the amount of $6,000. It is objected that the difference makes the transaction subsidiary.

An objection of this kind was made in the case of Shirras *v.* Caig, 7 Cranch, 34; but this court then said, it is true the real transaction does not appear on the face of the mortgage; the deed purports to have been a debt of thirty thousand pounds sterling, *due to all of the mortgagees.* It was really intended to have different sums due at the time to particular mortgagees, advances afterwards to be made, and liabilities to be encountered to an uncertain amount. After remarking that such misrepresentations of a transaction are liable to suspicion, Chief Justice Marshall adds: "But if, upon investigation, the real transaction shall appear to be fair, though somewhat variant from that which is described, it would seem to be unjust and unprecedented to deprive the person claiming under the deed real equitable rights, unless it be in favor of a person who has been in fact injured and deceived by the misrepresentation." In this case, the complainant has not been

deceived, and the variance between the alleged indebtedness and that advances were to be made afterwards gives to his suit no additional force or equity.

No proof was given by the complainant that he had been injured or deceived by it into making his purchase under the mortgages of Briggs and Atkyns, and that cannot be presumed in his behalf. In fact, there is not an averment in the complainant's bill in favor of the equity of his demand, which is not met and denied in the defendant's answer, and which has not been disproved by competent testimony. We do not think there is anything in the objection that the mortgage to H. A. Tucker to secure future advances by the firm of H. A. Tucker & Co. cannot stand as security for advances made after the admission of new partners into that firm. The cases cited in support of this objection do not sustain it, and we have not been able to find any one that does. They relate exclusively to stipulations for an advancement of money to a copartnership after a new member has been taken into the firm.

In respect to the validity of mortgages for existing debts and future advances, there can be no doubt, if any principle in the law can be considered as settled by the decisions of courts. This court has made three decisions directly and inferentially in support of them: United States *v.* Hooe, 3 Cranch, 73; Conrad *v.* Atlantic Insurance Company, 1 Peters, 448; Shirras *v.* Caig, 7 Cranch, 34. Tilghman, C. J., says, in 5 Binney, 590, Lyle *v.* Ducomb, "there cannot be a more fair, bona fide, and valuable consideration than the drawing or endorsing of notes at a future period, for the benefit and at the request of the mortgagors; and nothing is more reasonable than the providing a sufficient indemnity beforehand." Mr. Justice Story declared, in Leeds *v.* Cameron, 3 Sumner, 492, that nothing can be more clear, both upon principle and authority, than that at the common law a mortgage, bona fide made, may be for future advances by the mortgagee as well as for present debts and liabilities. I need not do more upon such a subject than to refer to the cases of the United States *v.* Hooe, 3 Cranch, 73, and Conrad *v.* the Atlantic Insurance Company, 1 Peters, 448.

We affirm the decree of the Circuit Court in this case, and shall remand it there for execution.