STEAM GAUGE & LANTERN CO. and another *v.* MILLER & CO.

(*Circuit Court, D. Connecticut.* August 16, 1881.)

1. RE-ISSUE No. 8598—TUBULAR LANTERNS—MOTION FOR PRELIMINARY INJUNCTION—VALIDITY—INFRINGEMENT.

Re-issued letters patent No. 8598, granted February 25, 1879, to John H. Irwin, for improvement in tubular lanterns, upon a motion for preliminary injunction, *held valid,* and *infringed* as to its *first* and *second* claims by lanterns constructed under letters patent No. 221,409, granted November 11, 1879, to Leonard Henkle, and letters patent No. 232,295, granted September 14, 1880, to Russell B. Perkins, and *motion granted.*

2. SAME—SAME—INFRINGEMENT.

Complainant's lantern—having a closed reservoir below the burner-cone; a perforated plate above such reservoir; a globe or protector surrounding the flame, with a slight inward deflection at its upper end; a tube suspended slightly above the top of the globe, ending below, with an annular flange or plate curved downwardly, and connected above with two or more tubes, which curve down along the length of the globe and enter the closed reservoir below, whereby the heated air from the flame causes an ascending current within the globe, which, when it reaches its top, ejects the products of combustion, and is forced, together with external air injected between the annular plate and the top of the globe, into the tubes, is conducted thereby to the closed reservoir below and fed to the flame, thus providing a continual supply of fresh air to the flame; the perforated plate admitting external air at the lower part of the device, tending to cool the globe and assist in creating the ascending current within the globe—*held infringed* by defendant's devices, in which the tubes are connected with the closed reservoir below the burner-cone, but are outside the globe, disconnected with each other, and permit the injection and supply of external air only to the flame.

3. MOTION FOR PRELIMINARY INJUNCTION—INFRINGEMENT MUST BE ESTABLISHED
—VALIDITY—PREVIOUS JUDICIAL CONSTRUCTION—PUBLIC ACQUIESCENCE.

Upon a motion for preliminary injunction the complainant must establish the point of infringement beyond a reasonable doubt, and as this question often depends upon the proper construction of the patent, its claims should ordinarily have been construed by a court of competent jurisdiction, or should have been practically construed by the consent and acquiescence of that part of the public which is cognizant of the extent of the monopoly.

*Edwin S. Jenney, Coburn & Thacher,* and *Benj. F. Thurston,* for plaintiffs.

*Betts, Atterbury & Betts* and *Charles E. Mitchell,* for defendant.

SHIPMAN, D. J. This is a motion for an injunction to restrain the defendant, *pendente lite,* from the infringement of the following-described letters patent to John H. Irwin, viz.:

Re-issue No. 8,611, dated March 4, 1879, the original being No. 73,012, dated January 7, 1868; re-issue No. 8,598, dated February 25, 1879, the original being No. 89,770, dated May 4, 1869; letters patent No. 104,318, dated June 14, 1870; and No 151,703, dated June 9, 1874.

These patents, except the first and last, were for improvements in lanterns. The first was for an improvement in lanterns and street lamps, and the last for an improvement in lamps and lanterns. All these lamps and lanterns were designed for burning kerosene.

It was not claimed that No. 104,318 or No. 151,703, or the lamps made thereunder, had ever been the subject of adjudication at final hearing. I shall not, therefore, examine either of those patents, and shall only refer to No. 104,318, in its historical relation to the art. The patents prior to No. 104,318, together with No. 65,230, dated May 28, 1867, show the course of Mr. Irwin's improvements in lanterns for burning mineral oils, and the progressive steps by which he reached success. The "tubular" lantern, which he manufactured under No. 89,770 and re-issue 8,598, has been a staple article throughout this country for many years, has superseded its predecessors, and has gone into universal use.

Patents 65,230, 73,012, and 89,770 were the subject of litigation at final hearing in the case of *Irwin* v. *Dane,* 9 O. G. 642, before Judges Drummond and Blodgett. The opinion of the court sustaining all the patents was rendered in 1876, and contains a statement of the art and of the invention to that date. It is impossible for me, without an expenditure of much more time than I now have at command, to state the character of Irwin's inventions so that they can be understood by a person who has had no previous acquaintance

with the subject, and I must, therefore, refer to *Irwin* v. *Dane* for an explanation of the various parts of the lamp, and of what was done by the patentee. The court decided as follows:

"We then come to the conclusion that Irwin was the first inventor of a device for securing a blast of fresh air to the burner of a lamp, by means of an inverted funnel or bell and one or more tubes, by which the air heated by the flame of the lamp is caused to rise into the tube and be thence conducted into a close reservoir below the flame, and from thence supplied freely to the flame, so as to sustain combustion. In other words, the combination of the bell, tube, air-chamber, and burner, as shown by his first patent, was original with him, and all who use bell and tube or tubes, substantially as and for the purposes Irwn used them, infringe his first patent. So all who use a globe in combination with the bell and tube infringe the second patent; and all who use the bell, tube, globe, and perforated plate, E, at the bottom of the globe, infringe the third patent."

The leading principle of No. 89,770 was to remedy the defect of 73,012 as a hand kerosene lantern, viz., a deficiency of air within the globe, by the injection of outside air into the tubes in a continuous and irreversible current, and in quantities sufficient to supply the flame, and consisted, generally, in placing the tube, H, entirely above the globe, and in substituting for the old "bell-mouth" of the tube a shallow concave plate, I, of larger diameter than the top of the globe. The open space between the plate and the globe admitted fresh air into the tubes, which were connected together, and which, having their mouths within the globe, received heated air from the globe and fresh external air. The necessity for the injection of fresh air into the tubes, and for an increased supply of oxygen to the flame, arose from the fact that, when the lantern was suddenly raised or oscillated, the impure air within the globe was precipitated, and smothered the flame.

In the specification the patentee said:

"When the lantern is at rest and not blown upon by the wind, the air, heated by the flame at the burner, rises in the globe and passes into the tubes H and F F. These tubes present a large radiating surface, and the heated air is thereby rapidly deprived of its caloric, so that the slight upward pressure of hot air in the tube, H, will be sufficient to insure a downward current of cooled air through the vertical portions of the tubes, F F, into the air-chamber, B, and the interior of the burner cone, C, to supply the flame with oxygen. Fresh air in the mean time passing up through the perforated plate, E, into the globe, tends to keep the glass cool, and mingles with the current from the tubes, F F.

"When the lantern is exposed to the wind the blast is distributed by passing through the perforated plate below, and, from the peculiar arrangement

of the plate, I, over the globe, the wind passing into the space between the rim or flange, *g*, and said plate, I, is deflected upward into the tube, II, where it mingles with the air heated within the globe, and so passes down the tubes, F F, to supply the flame, while the flange, *t*, upon the wick-tube prevents the force of the blast from extinguishing it. By making the rim, *g*, with its upper portion inclined inward, as shown, any current of air entering beteen the plate, I, and the rim, *g*, would thereby be deflected upward towards the mouth of the tube, II, and this deflection of a moving current of air would produce a current through the tubes, F F, in absence of any other cause. Also, when the lantern is swung from side to side, or oscillated, the centrifugal tendency of the air in the tubes causes the air to rush into the mouth of the tube, II, from without, thus producing the required current at the burner.

"From the above description it appears that there are three separate causes to produce a proper current of air through the tubes, F F, to the base of the flame, viz.: the ascensive force of the air heated by the burner flame and the cooling of said heated air within the tubes; the pressure of a moving current deflected towards the mouth of the tube, II; and the centrifugal effect of swinging or oscillating the lantern. And it will be observed that the second or third causes will always be cumulative with the first, to produce an increased current at exactly the time when an increased supply is demanded in consequence of the atmospheric disturbances in the immediate vicinity of the lantern."

The first claim of the patent was as follows:

"The combination of the plate, I, rim, *g*, or its equivalent, tubes, II and F F, and the base, A B, of the lantern, substantially in the manner specified and shown."

The other three claims are in the same general form, all speaking of the combination of the various parts by letters, with the tubes H and F, or the tubes H, F, etc.

In re-issue 8,598, the patentee, for the first time, styled plate I both an injector and ejector of air; but it is plain, from the following quotation from *Irwin* v. *Dane*, that the court, when considering the original patent, understood the ejecting feature of the space between the globe and the bell:

"The third device, as shown in patent No. 89,770, is for various improvements, which more nearly perfected the invention, and adapted it for use as a portable out-of-door lantern. The theory of Mr. Irwin seems to have been and is that the products of combustion, such as carbonic acid gas, steam, and other matters, rise with the current of air to the top of the protector, and are there thrown off from the outside of the rising column, and pass out over the top of the protector, and between it and the bell, while the air which passes into the bell is mostly pure atmospheric air, uncontaminated by and unmixed to any considerable extent with the products of combustion. In order to secure the exit of these products of combustion from the top of the lantern, a

sufficient space is left between the protector and the bell, which is occupied by the perforated rim, g, and the top of the rim is so curved and deflected in and upward, as to prevent currents of external air passing down the globe and extinguishing the flame   The globe, also, rested upon a perforated plate or disk, E, which formed the bottom of the globe, and which, also, by its perforation, admitted the air freely, so that the same could become heated, and crowd, so to speak, into the bell, so as to create the blast required for furnishing the air to the burner."

"On the trial of this case, several experiments were performed in the presence of the court, for the purpose of illustrating the operation of the various elements of the Irwin combination, which seemed to demonstrate—*First*. That it is essential to the operation of this lamp that a space should be left between the globe and bell sufficient to allow the escape of the products of combustion. If this space was wholly closed, so that the products of combustion were driven around and into the air-chamber and into the flame, the light was nearly extinguished and the operation of the lamp defeated. *Second*. That provision must be made for admitting an ample supply of air into the globe at its base, so that it might rise in the globe, become heated, and be driven into the bell and tube.

"When this supply of air was cut off, the flame died down, and the operation of the lamp was suspended."

In re-issue 8,598 the patentee retained, in the same language, three of the original claims, of which I have given an example, and introduced two broader claims, by which he claimed the various parts in the following manner:

" (1) In a lamp or lantern the combination of the following elements, viz.: a feed conduit or conduits, which supply fresh air to the burner to support combustion; a wick burner, protected by a deflecting cone or jacket; a globe or protector surmounting the burner and open at its open end; and a device surmounting the globe, constructed and arranged to operate as an atmospheric injector and ejector to inject fresh air to the feed conduits from the exterior atmosphere, and eject the contents of the globe from the top thereof, whereby a protected and continuous air-circuit is constantly maintained through the feed conduit or conduits, burner, and globe, substantially as described.   (2) In a lamp or lantern the combination of the following elements, viz.: a globe or protector surmounting the burner and provided with openings at the bottom for the passage of air independently of the burner; a wick burner protected by a deflecting cone or jacket; a device for injecting and ejecting air at the top of the globe; and a conduit or conduits for supplying fresh air to the burner; substantially as described."

The patent No. 104,318, no heated air is admitted into the tubes, and the entire supply of oxygen is from fresh air.   It is insisted by the defendant that this patent is limited by its terms to the peculiar construction of its devices for the admission and ejection of air.

In 1879 the Buffalo Steam Gauge & Lantern Company had com-

menced the manufacture of "No. 99," a lantern in which tubes disconnected with each other admitted only external air, the products of combustion being ejected through an annular space at the top of the lantern. The construction of the tubes and devices for the admission and emission of air was similar to that of 104,318. An application for preliminary injunction of this company's agent against infringement of re-issues 8,611 and 8,598 and patent 104,318, was heard before Judge Blodgett, who refused the motion conditionally, in case the defendants should file a bond of indemnity. *Irwin* v. *McRoberts*, 16 O. G. 853. The litigation then proceeded earnestly. Proofs were taken on both sides, and the case was about ready for trial, when the defendant's counsel settled the litigation by the purchase, from the owners, of one-half of the patent of their one-half interest and their tools and machinery, for $105,000, and by the purchase from said Irwin of his one-half interest in the causes of action, and of a sole license to manufacture and sell under his one-half interest in the patent for $105,000, subject to the rights of Robert E. Dietz, a licensee in the city of New York. This corporation subsequently became the Steam Gauge & Lantern Company, one of the plaintiffs herein.

The defendant is manufacturing and selling lanterns called "No. 13" and "No. 14," made under letters patent to Leonard Henkle, dated November 11, 1879, and to Russell B. Perkins, dated September 14, 1880. These lanterns have elevated tubes outside the globe, disconnected with each other, and for the admission of fresh air only. There are peculiarly-shaped injectors at the mouths of the tubes. The tubes not being within the globe, the part analogous to Plate I cannot serve as an injector. It is an ejector only.

Lanterns Nos. 13 and 14, and No. 99, are external air-feeders. The lantern under patent 73,012 is an internal air-feeder. The lantern under patent 89,770 is both an internal and an external air-feeder. The supply of external air was its important feature.

It is insisted by Mr. Irwin that, when used as a lantern and exposed to the wind, the external currents of air only fill the tube, and to that extent the statement in the original and re-issued patents of the philosophy of the mechanism may be incorrect. The limits to which I think that I am confined upon this motion prevent a consideration of this part of the subject; but although the patentee thought, at the dates of the invention and of the re-issue, that heated air would always be a cumulative supply, it is plain that he stated in the original specification that, when the lantern was oscillated in the open

air, external air would be furnished in sufficient quantities to produce the required current at the burner.

The affidavits of Messrs. Henry B. Renwick and John E. Earle, the experts for the defendant, do not deny the novelty of the Irwin tubular lamp, made either under patents 73,012 or 89,770. I mean that the novelty of the structure as a whole is not denied. The affidavits point out that previous patents had tubes for conveying heated air or fresh air to the flame, and each expert treats the respective Irwin inventions as new examples, respectively, of former classes of lamps.

In *Irwin* v. *Dane* the court came to the conclusion that the patentee had, by his successive combinations of devices, beginning with 65,330, introduced a new principle or set of principles into the construction of kerosene lamps and lanterns, and had entered upon a new field of invention. Neither can it apparently be denied that Irwin first made a hand kerosene lantern which could be relied upon when oscillated in the open air and exposed to currents or blasts of wind. The reason of its success must be that a hand-lantern, with a globe of ordinary size, needed a supply of external air, which must be furnished in a continuous and non-reversible current, and that Irwin's lantern furnished fresh air to the flame in such manner and by such means that the current was ample, continuous, and irreversible, and that the flame was not interfered with by cross currents.

Two facts seem to be established: (1) That Irwin's hand lantern, made in accordance with patent 89,770, was a novelty and a success; and (2) that it owes its success to the introduction of external air by the devices used, in combination with the other parts of the lantern.

The question of infringement remains to be considered. Upon a motion for preliminary injunction the plaintiffs must establish the point of infringement beyond a reasonable doubt, and as this question often depends upon the proper construction of the patent, its claims should ordinarily have been construed by a court of competent jurisdiction, or should have been practically construed by the consent and acquiescence of that part of the public which is cognizant of the extent of the monopoly. In this case it is contended by the defendant that its lanterns, having tubes disconnected with each other and incapable of receiving heated air from the globe, are not within either of the claims of No. 89,770, and therefore are not within those claims when repeated in the same language in re-issue 8,598. There is good reason for advocating this opinion, and therefore the motion cannot be granted as to those claims of the re-issue.

It is next claimed by the defendant that the conduits of the first

two claims of re-issue 8,598 must be the tubes, F and F, placed within the globe, where they can and do receive a supply of heated air, so that the ascensive current of heated air forms a part of the supply for the tubes, and also that the device or plate, I, which surmounts the globe, must both inject and eject air. In the defendant's lantern the injecting devices are directly over the tubes, and no air is injected from the opening over the globe.

There has been no adjudication by a court upon this question of construction. If it should be held that the fresh-air conduits must necessarily be within the globe so as also to receive heated air, or if the injecting devices must necessarily surmount the globe, then there is no infringement. It seems to me that the litigation in this case, taken in connection with the opinion in *Irwin* v. *McRoberts*, goes very far to answer the requirement of a deliberate examination and a decision by a court. Irwin and his co-owners engaged in an earnest and thoroughly-contested litigation with the Buffalo company upon the subject of these patents. The latter had the advantage of the skill and knowledge of the senior expert of the present defendant. It came to the conclusion to purchase peace and the right to manufacture under the Irwin patents. With a great sum it obtained its freedom. The settlement of the litigation and the acknowledgment of infringement by the defendant, was deliberately made under the advice of counsel, and after earnest attempts at compromise. The payment of $210,000 was a confession of inability to make a successful contest. This litigation, coupled with the opinion of Judge Blodgett in the case of *Irwin* v. *McRoberts*, where he was "very much impressed with the conviction that the defendant's lantern infringes the claim of the complainant's patents as they are re-issued," and in the opinion in *Irwin* v. *Dane* upon the broad character of the invention, brings the question of infringement as near to an adjudication as it is practicable without having an opinion by a court upon the precise question in dispute. I am satisfied that, by virtue of all the recited decisions and the circumstances of this case, the question has been so far settled that I ought not to refuse an injunction upon the ground of non-adjudication.

The defendant's experts, starting apparently upon the premise that the Irwin patents are only improvements upon the old English and French patents, properly come to the conclusion that they should be narrowly construed, and should be confined to the specific forms of devices which are respectfully shown. Without going back to the

earlier Irwin inventions, I think that in his patent 89,770 he was the predecessor and not a follower of others, and while, for the purposes of this motion, it is held to be true that his claims in the original patent were limited to the particular form of the devices described in the specification; yet that, by re-issue 8,595, he properly covered broader territory.

"If one inventor precedes all the rest, and strikes out something which includes and underlies all that they produce, he acquires a monopoly, and subjects them to tribute." *Sayles* v. *Ry. Co.* 97 U. S. 554.

I have not deemed it expedient to examine the claims of re-issue No. 8,611 upon the question of infringement. The plaintiffs make out a clear case of very serious injury in case a provisional injunction should not be granted.

The motion for an injunction, *pendente lite*, against the infringement of the first and second claims of re-issued patent No. 8,598 by the manufacture or sale of lanterns Nos. 13 or 14, or lanterns containing a combination of devices equivalent thereto, is granted.