### In re SUNFLOWER STATE REFINING CO.

(District Court, D. Kansas, Third Division. January 7, 1911.)

CORPORATIONS (§ 480*)—LIENS—ATTACHMENT—BONDHOLDERS—PRIORITY.

    Where a bankrupt corporation has executed and recorded a mortgage on its property to secure bonds to be issued, and thereafter, but before the bonds were issued, petitioner secured a lien on the company's property by a writ of foreign attachment, after which bonds were issued under the mortgage as collateral security for bona fide loans made after levy of the attachment, such bondholders were not bound to search the public records for liens on the company's property subsequent to the mortgage, and hence their liens were prior in right to that of the attaching creditor.

    [Ed. Note.—For other cases, see Corporations, Dec. Dig. § 480;* Mortgages, Cent. Dig. § 291.]

In Bankruptcy. In the matter of bankruptcy proceedings of the Sunflower State Refining Company. On application of William H. Holtgreve for allowance of his demand as a secured claim prior in right to those holding bonds of the bankrupt corporation in good faith issued and pledged to them as collateral security for money borrowed after the levy of petitioner's attachment, and secured by trust deeds on property of the bankrupt executed and recorded prior to the attachment. Application denied.

Kellough & Dillard, for trustee.
David Ritchie, for Holtgreve.

POLLOCK, District Judge. The question presented for decision arises in this manner: The bankrupt, the Sunflower State Refining Company, on May 22, 1905, duly made and executed its deed of trust or mortgage covering all its real and personal property therein mentioned and described by it then owned or afterwards to be acquired, to secure the payment of an issue of bonds in the sum of $125,000 and interest thereon, as specified in the mortgage. This deed of trust or mortgage so executed was filed for record about the date of its execution and recorded in the appropriate office by law provided to impart constructive notice to all parties. The property covered by the mortgage is situated in Chautauqua county, this state. There-

after, and on the 30th day of January, 1909, an action was commenced in the district court of Saline county, this state, by claimant, Holtgreve, against the bankrupt, to recover the sum of about $4,000, and a foreign writ of attachment was duly issued, directed to the sheriff of Chautauqua county, which said writ came into his hands and was duly levied in pursuance of the law of the state on certain property of the bankrupt mentioned and described in the trust deed or mortgage theretofore executed. The attachment was levied by the sheriff February 2, 1909. Thereafter the claimant, as plaintiff in said action, by the consideration of the district court of Saline county, on the 26th day of April, 1909, recovered a judgment against the bankrupt in the sum of $3,111.58, together with interest thereon at the rate of 5 per cent. per annum and costs of action, and an order to sell the attached property in satisfaction of said judgment. The bonds of the bankrupt company provided to be issued under the terms of the trust deed or mortgage were not presently caused to be issued, and so far as claimant holding said bonds as collateral security, the National Bank of Commerce of Kansas City, Mo., and the Pittsburg Crude Oil & Gas Company, are concerned, here contesting with the attaching creditor as to the prior rights in the property of the bankrupt, the bonds by them held were not actually issued and outstanding at the date said foreign writ of attachment was levied on the property of the bankrupt. Since said date there has been about $60,000, face value, of said bonds issued by the bankrupt in pursuance of the terms of the mortgage, pledged as collateral security to the National Bank of Commerce to secure the payment of promissory notes executed by the bankrupt, evidencing about $50,000 borrowed money; also certain of said bonds have in like manner, after the levy of the attachment, been pledged as collateral security with the Pittsburg Crude Oil & Gas Company, and perhaps other claimants.

The question thus presented is, Which claim has the prior lien on the property of the bankrupt, Holtgreve under the levy of his writ of attachment, or those claimants who in good faith hold bonds issued in pursuance of and in conformity to said deed of trust or mortgage made and recorded before the levy of the attachment, but who received from the bankrupt portions of the issue of said bonds as collateral security for bona fide loans made after the date the attachment was levied?

The insistence of attaching claimant, Holtgreve, is this: A mortgage under the laws of this state is a mere incident to the debt secured. Therefore, where the debt ceases by payment, or otherwise, the mortgage likewise ceases to exist as a lien, and by a parity of reasoning it is claimed, before the debt comes into existence, the mortgage, although properly executed, acknowledged, delivered, and recorded, does not come into existence as a lien on the property described therein. Therefore it is confidently asserted by attaching claimant in this case, as the foreign attachment under which he claims was duly issued, levied, and entered on the execution docket in the office of the clerk of the district court of the county in which the property is situate, so as to impart constructive notice, as required by section 4921, Gen. St.

Kan. 1901, before the actual issuance and delivery of the bonds as collateral security to claimants, as the debt secured by said bonds had no existence at the date of the levy of the attachment, the mortgage had no existence as a lien, and in consequence the attachment is prior in point of right.

On the contrary, it is the contention of those claimants who advanced money on the strength of the security afforded by the bonds issued in pursuance of the mortgage that the lien of the mortgage, on the issuance of the bonds, and their pledge to claimants, related back to the date of the mortgage. Therefore they were required to take constructive notice only of the state of the title and the liens attached thereto as shown by the public records at the date of the execution and recording of the mortgage, and were not bound to take notice of the attachment lien secured by Holtgreve, intermediate the execution and recording of the mortgage and the pledge of the bonds regularly issued in pursuance of its terms to them as collateral security. Therefore their claims are prior in point of equity to the rights of attaching creditor.

The solution of the problem thus presented is not entirely free from doubt. From an examination of the decided cases they are found to be in hopeless conflict. In some cases this conflict will be found to arise from a construction of local statutes which renders the conflict in such cases more apparent than real; but in others the conflict arises from the process of reasoning employed by the court, and is real. Hence the question presented must be ruled on principle, aided, in so far as may be done, by the decisions of the Supreme Court of this state construing our statutes relating to real estate mortgages and attachments.

In this state the lien secured by attachment fastens upon only the interest of the debtor in attachment in the property upon which the writ is levied at the date of the levy, and in consequence it is held a prior unrecorded mortgage, valid between the parties thereto, takes precedence over the lien of an attachment levied after the making but before the recording of the mortgage. N. W. Forwarding Co. v. Mahaffey, Slutz & Co., 36 Kan. 152, 12 Pac. 705; Holden v. Garrett, 23 Kan. 98. This also is the rule in Missouri under similar statutes. Reed v. Ownby, 44 Mo. 204; Potter v. McDowell, 43 Mo. 93; Stillwell v. McDonald, 39 Mo. 282. As ground for this holding, Valentine, J., in Forwarding Co. v. Mahaffey, Slutz & Co., delivering the opinion of the court, said:

"It is admitted that, at the time of the levying of the attachment, the mortgage, although it had not yet been filed for record or recorded, was valid as between the parties, and that a valid lien upon the property had already been transferred by the mortgage from the mortgagor to the mortgagee; and the defendants claim that the attachment lien did not attach to or affect the interest which had already passed to the mortgagee, but attached to and affected only what was still remaining in the mortgagor, that although the mortgage may be considered void, except as to the parties thereto and those having notice thereof, still the attaching creditor merely takes under one of the parties and gets no greater rights or interest than the party had under whom he takes, and for whom he is substituted and whom he represents, and he takes nothing and cannot take anything from some other person who holds adversely to the party under whom he takes. In attaching the prop-

erty he parts with nothing, and cannot in equity claim more than the person under whom he takes had a right to claim."

True, in the cases above cited, and kindred cases, the debt had been created, and the mortgage, although executed, outstanding, and valid as between the parties, though unrecorded, as to those dealing with the mortgagor in relation to the mortgaged property, without actual notice, was void, and created no lien.

The precise question, in principle, which here arises between an attaching creditor and those holding bonds of the bankrupt secured by the mortgage as collateral security, was presented in Claflin v. South Carolina R. Co. (C. C.) 8 Fed. 118, between those holding bonds as collateral security, precisely as in this case, and a subsequent mortgagee, whose mortgage was taken and recorded before the bonds issued under the first mortgage were pledged as collateral. Chief Justice Waite, delivering the opinion of the court at the circuit in that case, says:

"The question is thus distinctly presented whether bonds then in the hands of the company, or which afterwards got there, could be issued or reissued, so as to carry with them a lien under the first mortgage as against the second. This, as it seems to me, is a question of intention, to be gathered from the language of the instrument, considered with reference to the surrounding circumstances and the subject-matter of the contract. I am aware that, ordinarily, a debt once paid is extinguished, and that, as a mortgage is but an incident of the debt it secures, if there is no debt, there can be no mortgage. But here the point of the inquiry is whether the parties intended to apply this rule in all its strictness to the prior mortgage, about which they were contracting. Certain it is that, before the mortgage can be canceled, the debt it purports to secure must be shown never to have been created, or, if created, extinguished within the meaning of the contract for security expressed in the mortgage. As against other bondholders secured by the same mortgage, I cannot believe there is a doubt of the power of the company to put out and keep out the entire issue up to the time the bonds became due. The contract with the individual bondholder is no more than that he shall have his due proportion of the security the mortgage on its face implies. * * * Here the bonds put out, while not for circulation as money, were intended as articles of commerce, to be bought and sold in the market, and passed from hand to hand as current negotiable securities. They were to be used in trade. When in the hands of the company their lien under the mortgage was suspended; but, the moment they were out in the usual course of business, it again took effect as of the time the mortgage was given. Any other rule than this would materially impair the marketable value of this class of instruments, and tend to defeat the very object of their execution. The whole issue of such bonds must be treated as of the date of the mortgage, without regard to the time when they were actually put out, unless the contrary is clearly expressed."

In the briefs of solicitors for the respective parties in this case the question presented is treated as though the bonds, when issued and pledged as collateral, were received by those claimants who advanced the money in the same manner as though the mortgage had provided for future advances and the collateral had been received in this manner. It may be the question cannot in principle be distinguished from one in which money is received under a mortgage providing for future advances. If so, I am inclined to the opinion, while there are many cases found holding a contrary doctrine, that the better rule, and that supported by the greater weight of authority, is that the rights of

those claimants who in good faith received the bonds as collateral security for money advanced on the strength of the mortgage under which they were issued are prior in point of equity to the right of attaching claimant, Holtgreve. This precise question is elaborately discussed by Mr. Jones in his work on Mortgages (volume 1, 5th Ed., §§ 365, 379, inclusive). At section 368 the writer says:

"Mortgages to secure future advances or liabilities are valid and fixed securities against subsequent purchasers, or attaching creditors of the mortgagor, although the advances are made for the liabilities assumed after the record of such later deeds or attachments, and although it is optional with the mortgagee whether he will make such advancements or assume such liabilities or not, if they are made or assumed in good faith and without notice of any subsequent intervening incumbrance."

At section 372 the writer says:

"A prior mortgage is affected only by actual notice of a subsequent mortgage, and not by constructive notice from the recording of the second mortgage. Such, it is conceived, is the rule supported by reason and the weight of the authority."

And many cases will be found cited in support of the text.

Again, in sections 372 and 373, the writer says, after reviewing the authorities on the question presented:

"But the better authorities are against that view. A mortgage to secure future advances is a conveyance within the recording acts, and the record is notice to subsequent purchasers and incumbrancers, who are thereby put upon inquiry as to the extent of the advances made and to be made. The mortgage is a potential lien for the full amount of the advances contemplated, and through the record subsequent purchasers and incumbrancers have notice of the extent and purpose of the mortgage."

Section 373:

"The rule that a recorded mortgage expressed to cover future advances has priority in all cases over subsequent conveyances and incumbrances has full support in recent discussions, and must now be regarded as a settled rule of law. Notwithstanding all the distinctions and refinements which have been introduced into the law of this subject by the many conflicting adjudications upon it, there is strong reason and authority for the rule that a mortgage to secure future advances, which on its face gives information enough as to the extent and purpose of the contract, so that any one interested may by ordinary diligence ascertain the extent of the incumbrance, whether the extent of the contemplated advances be limited or not, and whether the mortgagee be bound to make the advances or not, will prevail over the supervening claims of purchasers or creditors, as to all advances made within the terms of such mortgage, whether made before or after the claims of such purchasers or creditors arose, or before or after the mortgagee had notice of them," etc.

In Courier Job Printing Co. v. Schaefer-Meyer Brewing Co., 101 Fed. 699, 41 C. C. A. 614, the Circuit Court of Appeals for the Sixth Circuit, now Mr. Justice Lurton, delivering the opinion of the court, said:

"Mortgages to secure future advances, or future liability as surety, are not unusual, and have been sustained in many cases. They constitute a continuing security for the time and to the amount fixed, when a particular advance or liability is incurred and paid off, wholly or in part, the mortgages, if so intended, will continue as a security for new advances or new liabilities made within the limit fixed. U. S. v. Hooe, 3 Cranch, 73, 2 L. Ed. 370; Shirras v.

Caig. 7 Cranch. 34. 3 L. Ed. 260; Lawrence v. Tucker, 23 How. 14. 16 L. Ed. 474; Hannum v. Wallace. 4 Humph. [Tenn.] 143; In re York, Fed. Cas. No. 18.138; Kramer v. Trustees. 15 Ohio, 253; Robinson v. Williams, 22 N. Y. 380."

In the light of authority and in the very reason of the matter, I am inclined to the opinion, in states having statutory provisions such as those of this state, when one in good faith either by absolute purchase or as collateral security for the repayment of a loan receives bonds duly executed under a valid mortgage regularly recorded, he need not make search of the public records for the purpose of ascertaining whether a writ of attachment has been levied on the property after the making and recording of the mortgage, but before he receives the bonds issued in pursuance thereof; that he is not, in the taking or purchasing of such bonds, charged with constructive notice of what the public records show as to such lien, although at the time he takes or purchases such bonds a writ of attachment in fact has been duly issued and levied upon the property in the manner provided by the statutes of the state, as was done in this case; that his search of the public records in such a case may properly end with the date of the execution and recording of the mortgage and the state of the title and liens of such date. If the bonds offered are legally issued under the provisions of the mortgage, and have not been paid off and discharged, the mortgage will constitute a continuing security for the amount of the bonds regularly issued thereunder, prior in point of right to the lien of the attachment.

It follows, as between those claimants holding bonds duly issued in pursuance of the terms of the mortgage May 22, 1905, although received as collateral security after February 2, 1909, the date the attachment was levied, are prior in point of equity to the claim of attaching creditor Holtgreve in this case. The claim of the attaching creditor, Holtgreve, will be allowed as a secured claim for the amount of the judgment rendered in the state court, $3,111.58, with interest thereon at the rate of 5 per cent. per annum until the date of adjudication, as a secured claim on the property of the bankrupt, seized under the writ of attachment, as shown by the return of the officer, junior and inferior only to the rights of claimants for the amounts of their respective claims as allowed, who in good faith hold bonds of the company pledged as collateral security issued under the mortgage of May 22, 1905, or those who by purchase hold any such bonds absolutely, if any such there be found.

It is so ordered.