COURIER-JOURNAL JOB-PRINTING CO. v. SCHAEFER-MEYER BREWING CO.

In re FIRST NAT. BANK OF LOUISVILLE.

(Circuit Court of Appeals, Sixth Circuit. May 8, 1900.)

No. 791.

1 BANKRUPTCY—JURISDICTION OF CIRCUIT COURT OF APPEALS—PETITION FOR REVIEW.

Bankr. Act 1898, § 24b, which authorizes the circuit courts of appeals to "superintend and revise in matter of law the proceedings of the several inferior courts of bankruptcy within their jurisdiction," is intended to provide a summary mode of reviewing the orders and decisions of the bankruptcy courts upon questions of law, and does not contemplate any review of the facts. The jurisdiction is to be exercised upon an original petition filed in the appellate court by any person aggrieved.

2. SAME—APPEAL.

Section 25a, providing that "appeals, as in equity cases, may be taken in bankruptcy proceedings from the courts of bankruptcy to the circuit courts of appeals," in certain specified cases, intends that the appellate court, on such an appeal, may review both questions of fact and of law.

3. SAME—REVIEW OF ORDER ALLOWING OR REJECTING LIEN.

Under the provision of the bankruptcy act that an appeal may be taken from a judgment of the court of bankruptcy "allowing or rejecting a debt or claim of $500 or over," when a creditor proving his debt in bankruptcy claims a lien on property of the bankrupt the question of the lien asserted is an incident to the allowance or rejection of the debt, and may therefore

be reviewed on an appeal from an order allowing or rejecting the debt; and such an appeal brings up both questions of law and fact. An order allowing or rejecting the lien claimed may also be, reviewed on a petition for review, but only as to matter of law.

**4. SAME—REQUISITES OF PETITION FOR REVIEW.**

A petition to the circuit court of appeals for a review of a decision of the district court sitting in bankruptcy should state specifically the question of law which was involved and ruled upon by the district court, and should be accompanied by a certified copy of so much of the record as will exhibit the manner in which the question arose and its determination; and the question of law so presented is the only question which will be decided by the appellate court.

**5. INDEMNITY MORTGAGE—CONTINUING SECURITY.**

Where a debtor, whose notes were indorsed or otherwise secured by several persons as sureties, gave them a mortgage on his property, conditioned to indemnify such sureties against all loss or damage on the debts on which they "may be bound as sureties as aforesaid, or may become hereafter bound as sureties, to the amount of $25,000, within four years from the date hereof," *held*, that the mortgage was not to be construed as confining the indemnity to the liability of the mortgagees, as sureties, then existing, or to mere renewals of paper on which they were already bound, but that, the original debt being paid off and new debts contracted within the four years, on which the mortgagees became sureties, they were protected by the mortgage, to the extent of $25,000, against such new indebtedness.

**6. SAME.**

A mortgage to secure future advances, or future liability of the mortgagee as surety for the mortgagor, constitutes a continuing security for the time and to the amount fixed. When a particular advance or liability is incurred and paid off, wholly or in part, the mortgage, if so intended by the parties, will continue as a security for new advances or new liabilities made within the limit fixed.

**7. SAME—AMOUNT SECURED—BANKRUPT MORTGAGOR.**

Where sureties receive an indemnity mortgage from their principal, to secure them against liabilities incurred in his behalf during a fixed period and to a limited amount, and thereafter, during the time stipulated, become responsible for the mortgagor in a sum greater than that limited, they cannot enforce the mortgage for a larger amount than the indemnity contracted for, as against the trustee in bankruptcy of the mortgagor, whatever might be their equities as against the mortgagor himself, for the estate of a bankrupt passes to his trustee subject only to actually existing liens and charges, and creditors of the bankrupt, seeking to be subrogated to the rights of the sureties, have no other or higher rights than the latter have.

**8. SAME—SUBROGATION OF CREDITORS.**

A debtor, whose commercial paper was indorsed and otherwise secured by several sureties, executed a mortgage on his property to indemnify such sureties against liability on the debts for which they were already bound, or debts for which they might become responsible during the ensuing four years, to the amount of $25,000 in all. After the debtor had given notes to a bank, on which the mortgagees were sureties, for amounts exceeding the sum named in the mortgage, he contracted a debt to another creditor, likewise secured, and became bankrupt, all within the four years. The latter creditor claimed to be subrogated to the rights of the mortgagees to the extent of his debt, but was opposed by the former creditor, which claimed the entire benefit of the mortgage for itself. *Held*, that both creditors were entitled to share ratably in the benefit of the mortgage.

On Petition for Review of a Decision of the District Court of the United States for the District of Kentucky, in Bankruptcy.

The petitioner is a creditor of the Schaefer Brewing Company, a corporation of the state of Kentucky, which was declared a bankrupt upon the petition of

creditors in the district court of the United States for the district of Kentucky. Its debt has been allowed as a general and unsecured claim, but it has been denied the benefit of a mortgage made by the bankrupt, and the object of the petition is to revise the order excluding it from participating in the benefit thereof. The petitioner's claim against the bankrupt's estate is evidenced by a note made April 10, 1895, with one Charles A. Schaefer as surety thereon. This note was originally for $3,000, but by payments had been reduced to $1,700. Petitioner sought to be subrogated to the rights and lien of the said surety, Charles A. Schaefer, under a mortgage made by the principal debtor for the purpose of indemnifying and protecting said Schaefer and others as sureties. This mortgage, so far as material, is as follows: "That whereas, the said parties of the second part, with one Adolph Meyer, have already become liable as sureties in various attitudes on commercial paper for the said party of the first part in the sum of twenty-four thousand seven hundred dollars upon an agreement, made at the time of the undertaking of such suretyship between the said party of the first part and the said parties of the second part, that said parties of the second part, with the said Meyer, should be secured from all loss or damage in their said suretyship by a proper mortgage upon the property of said party of the first part, hereinafter set forth and described, and are secured, and the signature of the said Meyer cannot be had to the renewals of said commercial paper, and the said parties of the second part have undertaken and agreed to continue to be so bound as sureties as aforesaid in various attitudes upon commercial paper for the said party of the first part up to the amount of twenty-five thousand dollars, inclusive of the amount for which said parties of the second part are already bound as aforesaid during the period of four years from the date hereof: provided, they, the said parties of the second part, should be lawfully indemnified and secured from loss in their said suretyship by mortgage of indemnity upon the said property: Now, this instrument witnesseth that in consideration of the undertaking and agreement of the said parties of the second part, and in pursuance of the said agreement and undertaking between the said parties of the first and second parts, and in consideration of the premises and one dollar, said party of the first part, in order to protect, indemnify, and save and keep harmless from all loss and damage the said parties of the second part in the amount for which they have already become liable as sureties as aforesaid, and in the amount for which they are to become liable, or any one or more of them may become liable, as sureties as aforesaid, has, and by these presents does, grant, bargain, sell, and convey to the said parties of the second part the following described and enumerated realty and personality, all in the city of Louisville, state of Kentucky: [Here follows description of land, etc.] The condition of this conveyance and transfer is such that should said party of the first part well and truly pay off and discharge all claims, debts, and liabilities on which said parties of the second part, or any or more of them, may be bound as sureties as aforesaid, or may become hereafter bound as sureties as aforesaid, to the amount of twenty-five thousand dollars, within four years from the date hereof, and save and keep harmless and from any and all loss by reason of their suretyship, then this conveyance is to be null and void; otherwise, remain of full force and effect." The Third National Bank likewise made proof of a claim against the bankrupt's estate, and set up a like claim to be subrogated to the lien of this and of two subsequent mortgages. This claim was evidenced by two notes, upon which all of the mortgagees of the mortgage of April 15, 1892, were sureties. These notes aggregated $32,000. The district court held that the said Third National Bank was entitled to be subrogated to the lien of the said mortgage of April 15, 1892, to the extent of $25,000, but was an unsecured creditor for the remainder of its debt. The First National Bank was excluded from any participation in the benefit of the said mortgage, because its debt was not made until after the limit of the mortgage had been reached, by the creation of more than $25,000 of debt to the Third National Bank, upon which the said mortgagees were bound as sureties.

John J. McHenry, for petitioner.

Lewis N. Dembitz, for appellee.

Before TAFT, LURTON, and DAY, Circuit Judges.

LURTON, Circuit Judge, having made the foregoing statement of the case, delivered the opinion of the court.

Two modes of reviewing the decisions and orders of the district court in bankrupt proceedings are provided by the bankrupt act. The first is that found in section 24b of the act, which provides that:

"The several circuit courts of appeal shall have jurisdiction in equity, either interlocutory or final, to superintend and revise, in matter of law, the proceedings of the several inferior courts of bankruptcy within their jurisdiction. Such power shall be exercised on due notice and petition by any party aggrieved."

Section 25a of the same act provides:

"That appeals, as in equity cases, may be taken in bankruptcy proceedings from the courts of bankruptcy to the circuit court of appeals of the United States, and to the supreme court of the territories, in the following cases, to wit: (1) From a judgment adjudging or refusing to adjudge the defendant a bankrupt; (2) from a judgment granting or denying a discharge; and (3) from a judgment allowing or rejecting a debt or claim of five hundred dollars or over."

The superintending and revising authority granted by the twenty-fourth section was evidently intended to provide a summary way for reviewing the orders and decisions of the bankrupt courts upon questions of law, and does not contemplate any review of the facts. Under section 25, a review of both questions of fact and law is contemplated. Under section 24, the jurisdiction is not exercised under an appeal, but upon an original petition filed in this court by any person aggrieved by the decision or order complained of. This differentiation of the modes of redress provided by the two sections seems altogether conformable to the language employed, and is the interpretation announced by the circuit court of appeals for the Seventh circuit in Re Rouse, Hazard & Co., 63 U. S. App. 570, 33 C. C. A. 356, 91 Fed. 96, and in Re Richards, 37 C. C. A. 634, 96 Fed. 935. The same interpretation is announced in the Fifth circuit court of appeals. In re Abraham, 35 C. C. A. 592, 93 Fed. 767, and In re Purvine, 37 C. C. A. 446, 96 Fed. 192. It was also the view taken by this court in Cunningham v. Bank (decided at this term) 101 Fed. 977. If the petitioner had desired a review of the question of the allowance of his claim upon both law and fact, he should have appealed. In Cunningham v. Bank, cited above, we held that the question of the rank or lien of a claim was an incident to the allowance or rejection of the debt for which a lien was allowed or denied, and might therefore be reviewed under an appeal from an order allowing or rejecting the debt, and that under such an appeal questions of both law and fact might be reviewed. Nevertheless an order allowing or denying a lien claimed may be reviewed upon petition, as to any matter of law. In re Rouse, Hazard & Co., 33 C. C. A. 356, 91 Fed. 96; In re Richards, 37 C. C. A. 634, 96 Fed. 935. No rule or order has been made by the supreme court regulating the practice under the twenty-fourth section, and none has been prescribed by this court. In Re Richards, cited above, the court of appeals for the Seventh circuit, speaking of the mode in which the jurisdiction of the court might be invoked under that section, said:

"In the case of an appeal, the facts as well as the law are before this court for review. In the case of original petition, this court has authority to review merely a matter of law arising in the course of the proceeding below. The latter is intended as a summary mode of reviewing any supposed erroneous holding upon a question of law, and does not contemplate a review of the facts. A similar conclusion was reached by the court of appeals of the Fifth circuit in Re Purvine, 37 C. C. A. 446, 96 Fed. 192. The petition in such case should state specifically the question of law which was involved and was ruled upon by the court below, and should be accompanied by a certified copy of so much of the record as will exhibit the manner in which the question arose, and its determination. Such question of law so presented is the question, and the only question, that can be properly ruled upon by this court upon an original petition."

This meets with our approval, and properly indicates the character of question which may be thus reviewed, and a proper mode of presenting it. The facts as they appear from the order sought to be reviewed, or as stated in the opinion of the court, or in the summary of evidence certified by the referee, where it appears that the order of the referee was reviewed by the district judge only upon such summary certified to him, must be treated as settling the facts upon which the "matter of law" arises which is sought to be reviewed. We must therefore ignore the averment in the petition that only $22,000 of the debt due to the Third National Bank was created within four years after the date of the mortgage of April 15, 1892. The referee and district judge seem to have proceeded upon the theory that as much as $25,000 of the claim of the Third National Bank arose within four years from date of the mortgage, and we shall treat that assumption as a fact.

The summary of the evidence certified by the referee to the district judge, and upon which alone the latter affirmed the order excluding the First National Bank from any participation in the benefits of the mortgage of April 15, 1892, shows (1) that no part of the debts due to either the First or Third National Banks represents the debt of the mortgagor existing at date of the mortgage under which both claim; (2) that the debt of $24,700 existing at date of the mortgage, upon which one or more of the mortgagees were bound in some attitude as a surety, has been paid off or in some way extinguished; (3) that the debt to the petitioner was made April 10, 1895, and that Charles A. Schaefer, one of the mortgagees, became, and still is, bound thereon as a surety; (4) that more than $25,000 of the aggregate debt now due to the Third National Bank had been created before the debt to the First National Bank was made. It also appears that the mortgagor subsequently made two other mortgages covering the same property, both to the mortgagees in the mortgage of April 15, 1892, and intended to indemnify them as sureties. One of these later mortgages was made January 12, 1897, but is not included in the record before us. The other mortgage bears date February 19, 1894, and is for the purpose of indemnifying the mortgagees, jointly, up to the sum of $5,000, against liability as sureties, "exclusive of and in addition to" the indemnity provided by the mortgage of April 15, 1892. The former mortgage is expressly recognized, and the only purpose of the later instrument seems to have been to increase the amount of indemnity by $5,000,—limited, however, to paper jointly secured by those mort-

gages. The property of the brewing company at the date of these three indemnity mortgages was subject to two other mortgages aggregating $50,000. The court below found that, under the charter of the corporation, it was prohibited from mortgaging its property to an amount in excess of $75,000, and that any creditor affected by mortgages in excess of that sum could avoid any mortgage in excess of $75,000. The court therefore held the indemnity mortgages of February 19, 1894, and January 12, 1897, void and unenforceable, upon the authority of Bells & Coggeshall Co. v. Kentucky Glass Works (Ky.) 48 S. W. 440. The petitioner, not being interested under either of the last indemnity mortgages,—his debt being secured by only one of the mortgages,—has not complained of this decision. The single error of which the petitioner complains is that the court erred in denying to it any benefits under the mortgage of 1892, and in adjudging that the Third National Bank was entitled to the full indemnity provided by that instrument. The referee seems to have based his order excluding petitioner from subrogation under that mortgage upon the ground that it had been satisfied and extinguished by the subsequent payment of the $24,700 of liabilities there existing, upon which the mortgagees, or some of them, were bound as sureties, and that only $300 of additional or new liability was protected thereunder. Upon this theory the referee ruled that the two later mortgages were valid to the extent of $24,700, and gave to the Third National Bank the benefit of a lien to that extent by virtue of said mortgages, and to the extent of $300 under the mortgage of April 15, 1892. The district judge construed the first indemnity mortgage as intended to protect the mortgagees to the extent of $25,000 against liability as sureties upon either existing or new obligations incurred within four years, but that the protection of the mortgage was exhausted whenever the mortgagees had indorsed up to that amount. That the district judge regarded the mortgage as an indemnity upon new paper, as well as against liability upon old or renewed paper, is made evident from the fact that the order made by him adjudged that the said Third National Bank was entitled to and had a lien, "under and by virtue of the mortgage of April 15, 1892, upon the property therein described, for the sum of $25,000." We quite agree with the district judge in construing that mortgage as not confining the indemnity thereby afforded to the then existing liability of the mortgagees as sureties, or to mere renewals of existing paper upon which they were already bound. The clear purpose of the parties was to not only indemnify the mortgagees as sureties upon debts already made, but to indemnify them against loss upon future indorsements made at any time within four years. In consideration of this indemnity the indemnitees agreed to continue to lend their names as sureties or indorsers up to the amount of $25,000 at any time during four years. The mortgage was to be satisfied not alone by paying the claims on which the mortgagees were then bound, but by paying such liabilities upon which they might be "hereafter bound," "to the amount of $25,000, within four years from the date hereof." Mortgages to secure future advances, or future liability as surety, are not unusual, and have been sustained in many cases. They constitute a continuing security for the time and to the amount fixed. When a particular ad-

vance or liability is incurred and paid off, wholly or in part, the mortgage, if so intended, will continue as a security for new advances or new liabilities made within the limit fixed. U. S. v. Hooe, 3 Cranch, 73, 2 L. Ed. 370; Shirras v. Caig, 7 Cranch, 34, 3 L. Ed. 260; Lawrence v. Tucker, 23 How. 14, 16 L. Ed. 474; Hannum v. Wallace, 4 Humph. 143; In re York, Fed. Cas. No. 18,138; Kramer v. Trustees, 15 Ohio, 253; Robinson v. Williams, 22 N. Y. 380.

The question which has given us the most concern arises out of the fact that the paper secured by the mortgagees, within the time limit of the mortgage, exceeds the amount which the mortgagees were bound to indorse, and the amount of the indemnity. The amount of indemnity contracted for was $25,000. To this extent, and no more, the property was incumbered for the protection of the sureties. They bound themselves, during the limit of the mortgage, in the amount of about $35,000. If they had paid this sum and then sought to enforce the mortgage, they could have enforced it only to the extent of $25,000. Possibly, as between themselves and the mortgagors, the latter could not, in equity, compel a reconveyance of the legal title until the whole debt had been paid. Williams v. Love, 2 Head, 79. But that principle would not apply against subsequent incumbrances, and should not when bankruptcy has occurred. The estate passes to the trustee of the bankrupt, subject only to actually existing liens and charges. The creditors of the bankrupt have no other or higher right than the surety has. The right of the creditor is to have the benefit of all securities belonging to the debtor which he has given to his surety for his indemnity. Hampton v. Phipps, 108 U. S. 260, 2 Sup. Ct. 266, 27 L. Ed. 719; Bank v. Stewart, 4 Dana, 27; Black v. Kaiser, 91 Ky. 422, 16 S. W. 89; Breedlove v. Stump, 3 Yerg. 257; Greenlaw v. Pettit, 87 Tenn. 480, 11 S. W. 357. It is true that the sureties were not obliged to secure paper in excess of $25,000 at one time. But they did. What is the result? The amount of the indemnity is not thereby increased. That remains fixed, and is as if $25,000 in value, and no more, had been placed in the hands of the sureties to indemnify them. They could keep themselves safe by refusing to indorse beyond the amount of the indemnity. The mortgagor had no direct purpose to secure its creditors. Nor had it any purpose to indemnify its sureties as sureties upon any particular debts. The benefit of the indemnity is accorded to the creditor only through the right and lien of the surety. Equity proceeds upon the notion that the application of the debtor's property, in the hands of the debtor's surety, to the payment of the debt for which the surety is bound, is conformable to the justice of the matter and the purpose of all parties. Hence the creditors may compel, by a direct suit, the application of any collateral held by the surety for his indemnity which belongs to the debtor. But which creditor has this right? Here are two. One presents a debt made before the debt of the other, and says: "I am prior in time. If there is not enough for both, I must be paid first, because prior in origin of debt." Clearly, that is no ground. The indemnity was against any indorsement, up to $25,000, made within four years. Every creditor coming within this restriction is entitled to share

equally, if the fund is not enough to pay all. But the first creditor adds: "The indorsement of my debt exhausted the amount which the sureties were bound to secure. Your debt originated after mine, and was indorsed in excess of the amount the sureties undertook to indorse." This raises an objection to the participation of the petitioner which is not without weight, and has given us serious consideration. We have, however, concluded that every debt indorsed by one or more of the mortgagees, within the time limit of the mortgage, is entitled to share equally in the distribution of the indemnity provided by the mortgage. The mortgagor did not intend to secure any particular indorsements. It is as if it had said: "I want you to indorse for me, and to continue my indorser from time to time for the next four years up to as much as $25,000. Here is property worth $25,000, which I will place in your hands to indemnify you against loss as my surety." Under this arrangement the surety becomes bound on paper in excess of $25,000. When the creditors holding such paper come to secure the appropriation of the collateral deposited by the debtor with the surety, justice is best attained by equality of right. The limitation placed upon the amount of liability which the mortgagees agreed to assume was not for the benefit of the creditor. Neither was the mortgage itself intended for his benefit. The right of subrogation arises not out of contract, but is a pure equity, and allowed only where it does not conflict with the legal or equitable rights of other creditors of the common debtor. Greenlaw v. Pettit, 87 Tenn. 480, 11 S. W. 357; Pom. Eq. Jur. (1st Ed.) § 1419, note 1. Any creditor coming with a debt made within four years after the date of the mortgage, and secured by one or more of the mortgagees, is within the restrictions of the mortgage and within its equity.

We therefore conclude that the district court erred in the order made, and that the petitioner is entitled to share ratably with the Third National Bank in the benefits of the mortgage. The order will be set aside, and an order of distribution made in conformity with the view here expressed. The Third National Bank will pay the costs of this proceeding.