LAMOILLE COUNTY SAVINGS BANK AND TRUST COMPANY *v.* HARRY W. BELDEN AND MOUNT MANSFIELD CREAMERY ASSOCIATION.

May Term, 1916.

Present: MUNSON, C. J., WATSON, HASELTON, POWERS and TAYLOR, JJ.

Opinion filed October 30, 1916.

*Mortgages—Conditioned to Secure Future Indebtedness—Constructive Notice to Grantee of Premises Subject to Mortgage—Bona Fide Purchaser for Value, Without Notice—Description of Mortgage in Deed—Assumption of Mortgage by Grantee—Parol Evidence Rule—Consideration—Liability of Grantee—Subrogation—Decree of Foreclosure—Time for Redemption.*

Where a man and his wife executed a mortgage to the plaintiff bank, conditioned for the payment of a certain promissory note, and for the payment to the bank of "all other sums we or either of us now owe it, or may become owing it in any way," the language was sufficiently broad to include a promissory note given by one of the mortgagors to a third person, which subsequently, on indorsement by such third person, was discounted and owned by the bank in its usual course of business.

Where the mortgagors conveyed the property so mortgaged to the defendant, by warranty deed, warranting that the premises were free from incumbrance "except $3,000 mortgage held by the Capital Trust Co., $3,000 held by Lamoille Co. Sav. Bank & Tr. Co., and $500 held by Union Sav. Bank & Trust Co., all which mortgages said grantee assumes and agrees to pay", the word, "mortgage"

is to be understood as following the sums mentioned as being held by the two last mentioned banks.

In such case the defendant, at the time of taking the warranty deed, had at least constructive notice of the full conditions of the plaintiff's mortgage; and was bound in law to inquire of the plaintiff, if he was interested to know what constituted the mortgage debts, and their aggregate amount; and, making no inquiry, was chargeable with notice of all the facts that could have been obtained by the exercise of reasonable diligence in prosecuting inquiry in that direction.

In order to entitle the defendant to protection against the plaintiffs' mortgage, he must be a *bona fide* purchaser without notice, and for a valuable consideration, and must have paid the purchase money.

The fact that the defendant, before receiving information as to the amount due under plaintiffs' mortgage, had given his note to one of the mortgagors for part of the consideration, did not place him in the position of having paid the purchase money.

Where a warranty deed excepted a $3,000 mortgage on the premises, the sum "$3,000" was given by way of description to identify the mortgage, and not as stating any limitation in the amount of debts secured by it.

Where a warranty deed excepted several mortgages upon the premises conveyed "all which mortgages said grantee assumes and agrees to pay", this was an assumption of the payment of the entire mortgage debt, and, the agreement being in this respect plain and free from ambiguity, the legal operation thereof cannot be varied by parol evidence that a part only of the debt was to be paid by the grantee.

In such case the acceptance of the deed was a sufficient consideration for the agreement of the grantee to assume the mortgage debt upon the property.

By accepting a deed, and agreeing therein to assume a mortgage debt upon the property conveyed, the grantee becomes personally liable for the fulfillment of the agreement to his grantor, and the benefit thereof inures to the mortgagee who may enforce it in equity directly against the grantee.

A grantee in a deed, who has assumed and agreed to pay the mortgage debt upon the property, and who has paid certain notes, secured by the mortgage, upon which notes are accommodation indorsements, is not entitled to receive the notes uncancelled and to be

subrogated to the rights of the mortgagees against the accommodation indorsers, because, by the force of his assumption of the mortgage, the grantee is primarily liable as a principal for the mortgage debt as a whole, and a payment by him operates in law as an extinguishment of all the notes constituting it.

The decree in this case for the orator, *held*, defective because the defendants cross bill was not dismissed therein.

Notwithstanding Rule 38, of the court of chancery, which provides that the time of redemption in the foreclosure of a mortgage shall, unless otherwise ordered, be one year, to run from the date of the decree, it is necessary as an incident to the remedy that the decree shall allow a time therefor.

APPEAL IN CHANCERY. Petition to foreclose a mortgage. Heard on bill, answer, cross bill and report of a special master at the December Term, 1915, Lamoille County, *Fish,* Chancellor.

STATEMENT BY WATSON, J. The mortgage sought to be foreclosed, was executed by C. F. Eddy and his wife Dora S. Eddy, and delivered to the plaintiff on December 12, 1910; and on the same day it was duly recorded in the land records of the town of Stowe, this State, the town in which the lands covered by the mortgage are situated. The mortgage is conditioned for the payment by the said C. F. Eddy and Dora S. Eddy to the plaintiff bank its successors and assigns, the sum of three thousand dollars specified in a promissory note dated December 12, 1910, payable to the order of the bank, five hundred dollars on the 15th day of June and of December, respectively, of each year thereafter, with interest, according to the tenor and effect of said note, (the condition continuing), "and shall pay said bank all further sums we or either of us now owe it or may become owing it in any way," etc.

The findings of fact show that on December 23, 1912, C. F. Eddy, W. B. Macutchan, and M. C. Lovejoy, made and delivered to the plaintiff, two other promissory notes for the sum of one thousand dollars each, and that there was due thereon, August 28, 1915, the sum of $2,275.80; that Macutchan and Lovejoy were accommodation signers, the avails of the notes passing to the sole benefit and use of Eddy, and the same were paid by the bank in the belief that the notes were secured by the mortgage in question; that Macutchan and Lovejoy knew of this

mortgage and relied upon it in signing these notes with Eddy; that on September 29, 1913, C. F. Eddy made and delivered to P. D. Pike & Son, a promissory note for one thousand dollars, payable to their order seven months after date with interest annually, which note was indorsed by the payees to, and became the property of, the plaintiff bank on the 3d day of October, 1913, the avails thereof being paid by the bank to the payees; that there was due on this note, August 28, 1915, $1,118.30; that all the aforementioned notes were past due when these foreclosure proceedings were commenced, and the aggregate amount due thereon August 28, 1915, was $6,808.41.

It is found that on October 6, 1913, Belden became accommodation indorser for Eddy of two notes to the City Trust Company of Burlington, aggregating three thousand dollars, and for protection from loss or liability thereon, took a mortgage on the same property covered by the plaintiff's mortgage, and on other property called the Smalley place, subject to a mortgage to the Union Savings Bank of Morrisville, for five hundred dollars, and subject to the mortgage to the plaintiff; that on November 18, 1913, C. F. Eddy sold to Belden the same property described in the plaintiff's mortgage, also the Smalley place, and on the same day Eddy and his wife conveyed the property by warranty deed, in which the premises are warranted free from every incumbrance "except $3,000 mortgage held by the Capital Trust Co., $3,000 held by Lamoille Co. Sav. Bank & Tr. Co. and $500 held by Union Sav. Bank & Trust Co. all which mortgages said grantee assumes and agrees to pay." It is further found that the consideration given by Belden for this deed was a note for five hundred dollars, payable to Mrs. C. F. Eddy, which he afterwards paid, and the assumption by him of the payment of certain notes aggregating three thousand dollars, to the City Trust Company of Burlington, and said note for five hundred dollars to the Union Savings Bank of Morrisville, and the note for three thousand dollars, described in the plaintiff's mortgage, making a total of seven thousand dollars; that on July 16, 23, and September 4, 1914, Belden offered to pay the plaintiff the two notes signed by Macutchan and Lovejoy as accommodation signers, and the note given by Eddy to P. D. Pike & Son, and by the latter negotiated to the plaintiff bank as stated above, provided that the bank would surrender these notes to him uncancelled; but the bank refused to accept the money with such

condition attached, on the ground that the transaction would amount to a sale, not a payment, and that they would not sell the notes.

No answer was filed by the defendant Mt. Mansfield Creamery Association. Defendant Belden filed answer and cross-bill. The plaintiff filed answer to the cross-bill, and replication. The case was heard by a special master.

The decree is, ''That all the notes held by the plaintiff against C. F. Eddy and described in the petition are secured by the mortgage in question. A decree may pass according to this decision. Done,'' etc., ''this 11th day of February, 1916.''

From this decree, defendant appealed.

*R. W. Hulburd* and *John W. Redmond* for the petitioner.

*M. G. Leary* and *V. A. Bullard* for defendant.

WATSON, J.  It is contended by the appellant that the note given by C. F. Eddy to P. D. Pike & Son, (hereinafter called the Pike note,) and by them negotiated to the plaintiff bank is not secured by the mortgage in question, it not being a note given by the mortgagors or either of them to the bank, but a note given to third persons and by the latter negotiated to the bank, basing such contention on the ground that a construction by which the mortgage stood as security for a note thus acquired by the bank, is against public policy. But we do not think it is a question involving public policy. There is no legal reason why a person doing business with, or discounting promissory notes at, a bank, may not, in giving it a mortgage as security for present and also for future indebtedness of the mortgagor, make the general terms of the clause covering the latter sufficiently broad to include a promissory note given by the mortgagor to a third person, which subsequently, on indorsement by such third person, is discounted and owned by the bank in its usual course of business. In this respect, the question in the instant case is therefore not to be determined on public policy, but on the intention of the parties as gathered from the mortgage itself under rules applicable to the construction of such written instruments.

By its terms, the mortgage was security to the bank for the payment of the note particularly described in the condition, and also for the payment of all ''further sums'' that the mortgagors

or either of them owed the bank at the time of the execution of the mortgage, or might thereafter "become owing it in any way." No question is made but that the plaintiff is a bank of discount and deposit. The term "further sums" refers to sums of indebtedness in addition to that represented by the note described; and the phrase "in any way," construed as it should be with reference to the subject-matter to which it relates and the character of the mortgagee (*West London R. Co.* v. *London and North-Western R. Co.*, 11 C. B. 254, 356), shows that the word "owing" is not to be taken as restricted in sense, but rather as universal and indefinite, extending to all sums that might become owing from the mortgagors or either of them to the bank, whether by direct dealings between them, or by way of bills, notes, and other evidences of debt given by the former to the order of third persons and, on indorsement by the payees, discounted by the bank in its usual course of business. We think this construction is in accordance with the intention of the parties, and that the condition of the mortgage covers the debt evidenced by the Pike note negotiated to the bank and owned by it. See *Soule* v. *Albee*, 31 Vt. 142; *Gleason* v. *Kinney*, 65 Vt. 560, 27 Atl. 208; *Keyes* v. *Bump*, 59 Vt. 391, 9 Atl. 598; *Bank of Paterson* v. *Byard*, 26 N. J. Eq. 255; *Collins* v. *Gregg*, 109 Iowa 506, 80 N. W. 562. And in the absence of any finding of conspiracy, as claimed by the appellant, the mortgage must be given its full operation in this respect, notwithstanding C. F. Eddy gave the Pike note not understanding or intending that it should be so secured. The intended scope of the mortgage controls.

On October 6, 1913, the land covered by the plaintiff's mortgage, and other land called the Smalley place, were mortgaged by C. F. Eddy to the appellant, subject to two prior mortgages named, one of which is the plaintiff's mortgage in suit; and on November 18, 1913, all the lands so mortgaged to the appellant were sold to him by C. F. Eddy, the conveyance thereof being by warranty deed of that date executed by the latter and his wife. In and by that deed, the premises are warranted free from every incumbrance, "Except $3,000 mortgage held by Capital Trust Co., $3,000 held by" Lamoille County Savings Bank & Trust Co., "and $500 held by Union Savings Bank & Trust Co., all which mortgages said grantee assumes and agrees to pay." It will be seen that in the part of the exception particularly men-

tioning the plaintiff bank, there is an ellipsis between the dollar-mark and figures ''$3,000,'' and the word ''held.'' In technical phrase, the word ''mortgage'' is to be there understood. A like ellipsis occurs in the part particularly mentioning the Union Savings Bank & Trust Company, immediately following the dollar-mark and figures ''$500,''—the word ''mortgage'' is to be understood there also. Hence in construing the instrument, we treat the word ''mortgage'' as being thus grammatically understood to complete the sense, the significance of which more particularly appears in connection with our discussion of the appellant's case under the cross-bill.

If the appellant, at the time of taking the warranty deed mentioned, did not have actual knowledge of the full conditions of the plaintiff's mortgage, he had constructive notice thereof; and if he was interested to know what constituted the mortgage debts and their aggregate amount, he was in law bound to inquire of the plaintiff. Making no such inquiry, he is chargeable with notice of all the facts that could have been obtained by the exercise of reasonable diligence in prosecuting inquiry in that direction. *Seymour* v. *Darrow,* 31 Vt. 122; *Passumpsic Savings Bank* v. *First National Bank,* 53 Vt. 82; *Passumpsic Savings Bank* v. *Buck,* 71 Vt. 190, 44 Atl. 93. In addition to this it is found that on or about the next day after the appellant purchased the equity of redemption and before any actual money had been paid out by him on account of the purchase, though after he had given his note for part of the consideration. payable to Mrs. Eddy, he was informed by one of the directors of the plaintiff bank that the debt covered by the mortgage in question was more than three thousand dollars, that the Pike note had been indorsed to the bank, and he thought there was two thousand dollars (two notes) in addition secured by the mortgage; that on the same day Eddy, the appellant, and the same director of the bank together took advice of counsel upon the legal question whether the last three notes were covered by the mortgage, and were advised by him that he could not see why they were not. This clearly shows that as against the plaintiff's mortgage the appellant can stand no better than the mortgagors; for to entitle him to any protection against the mortgage, not had by them, he as purchaser must be not only *bona fide,* and without notice, and for a valuable consideration, but he must have paid the purchase money. Story's Eq. Jur. §1502; *Abell* v. *Howe,*

43 Vt. 403; *Reynolds* v. *Haskins,* 68 Vt. 426, 35 Atl. 349. Nor does the fact that at the time of receiving such information he had given his note to Mrs. Eddy for part of the consideration, make any difference with the application of this principle, for a court of equity would stop payment of the money due on the note. *Tourville* v. *Naish,* 3 P. Wms. 306.

Recurring to the warranty deed under which the appellant holds the equity of redemption, wherein as construed it is stated that a ''$3,000 mortgage'' on the premises is held by the plaintiff, manifestly the sum ''$3,000'' is given by way of description to identify the mortgage, (that being the face of the note particularly described therein,) and not as stating any limitation in the amount of debts secured by it; and the provision immediately following in the deed, ''all which mortgages said grantee assumes and agrees to pay,'' is an assumption of the payment of the plaintiff's entire mortgage debt, not merely a part of it. The agreement contained in the deed in this respect is plain and free from ambiguity, and the legal operation thereof can not be varied or affected by the finding on parol testimony showing the consideration given for the deed. In *Simanovich* v. *Wood,* 145 Mass. 180, 13 N. E. 391, an action for breach of covenant against an admitted incumbrance of an unpaid betterment assessment, the defendant offered to prove by parol testimony that at the time the deed was given, and as a part of the consideration, the plaintiff promised to pay the assessment. The court said: ''This evidence was rightly rejected. It directly varied and contradicted the written contract of the defendant. The covenant is against all incumbrances. The evidence offered was for the purpose of showing an oral agreement that the incumbrance created by the assessment was not within the covenant. While for some purposes it is competent to show what the real consideration of a deed is, a party cannot, under the guise of showing what the consideration is, prove an oral agreement, either antecedent to or contemporaneous with the deed, which will cut down or vary the stipulations of his written covenant. This would violate the well settled rule of law, which will not permit a written contract to be varied or controlled by such testimony.'' To the same effect are the cases: *Beach* v. *Packard,* 10 Vt. 96, 33 Am. Dec. 185; *Taylor* v. *Gilman,* 25 Vt. 411; *Butler* v. *Gale,* 27 Vt. 739. The value of the property conveyed is not found. Nor is a finding in this behalf essential to

the binding effect of the grantee's assumptive agreement; the acceptance of the deed was a sufficient consideration for such agreement. Jones Mort. (4th ed.) §752; *Bay* v. *Williams,* 112 Ill. 91. By such acceptance the grantee became personally liable for the fulfilment of the agreement to his grantor, and the benefit thereof inures to the mortgagee who may enforce it in equity directly against the grantee. Jones Mort. Id.; *Green* v. *McDonald,* 75 Vt. 93, 53 Atl. 332.

The appellant's position that on payment of the mortgage notes, he is entitled to have the two notes on which Macutchan and Lovejoy are accommodation signers, and the Pike note, turned over to him uncancelled, is untenable. Saying nothing about the right of the plaintiff to reject any offer of payment made upon such condition, the appellant, by force of his assumption of the mortgage, is primarily liable as principal for the mortgage debt as a whole, and a payment by him operates in law as an extinguishment of all the notes constituting it. *Converse* v. *Cook,* 8 Vt. 164; *Willson* v. *Burton,* 52 Vt. 394; *Deavitt* v. *Ring,* 74 Vt. 431, 52 Atl. 1045. Without regard to other obstacles standing in the way in this respect, it is sufficient for the disposition of this branch of the case to say that payment by the appellant of his primary liability can afford no ground upon which to predicate the doctrine of subrogation. *Bank* v. *Cushing,* 53 Vt. 321; *Underwood* v. *Metropolitan National Bank,* 144 U. S. 669, 36 L. ed. 586.

The decree rendered below, however, is defective: (1) the cross-bill should have been dismissed; and (2) it was essential to the decree that it fix a time of redemption. Notwithstanding Rule 38 of the court of chancery says the time of redemption shall, unless otherwise ordered, be one year, to run from the date of the decree, it is necessary as an incident to the remedy that the *decree* shall allow a time therefor. *Smith* v. *Bailey,* 10 Vt. 163; *Davenport* v. *Davenport,* 80 Vt. 400, 68 Atl. 49. On remand of the case, the decree should be altered to correct these defects.

*Decree affirmed and cause remanded with directions that the decree be so altered as to include the further element mentioned under division (1) of the last paragraph in the opinion. Let a time of redemption be fixed.*