[No. 20751. Department Two. January 6, 1928.]

JOHN M. CAREY et al., Respondents, v. FRED HERRICK, Appellant.[1]

[1] ARBITRATION AND AWARD (2)—AGREEMENT—CONSTRUCTION. An arbitration agreement between parties having an option to make either a common law or a statutory arbitration, must be construed to be a common law arbitration, where it failed to provide for a statutory arbitration and contained provisions, contrary to the provisions for a statutory arbitration, that the findings shall be "final, conclusive and binding upon all parties."

[2] SAME (11, 16)—AWARD—MISTAKE—CONCLUSIVENESS OF ADJUDICATION. Where a common law arbitrator, with unlimited authority to determine both the facts and law, without any power to review his mistake, recites in his award that he followed and applied a certain method or rule of law, and it is apparent that he made a mistake in applying the law or facts under the method set out, the courts have power to correct the mistake in a suit brought for that purpose.

[3] MORTGAGES (8)—LIABILITIES WHICH MAY BE SECURED—FUTURE ADVANCES. A mortgage given for $16,020 and any and all other indebtedness "that may become due and owing during the life hereof" is valid for any unliquidated sum or indebtedness which may exist, without any limitation as to the amount.

[4] PAYMENT (12)—APPLICATION—RIGHTS OF PARTIES—APPROPRIATION BY DEBTOR. There being no privity between an attaching creditor and a third person who owes the debtor, such third person and debtor have the exclusive right to make appropriation of payments to such debts as they may agree upon, and the attaching creditor has no right to direct the application of the payments.

Appeal from a judgment of the superior court for Spokane county, Huneke, J., entered February 21, 1927, confirming an award on arbitration, after a hearing before the court. Affirmed.

*Post & Russell, John P. Gray,* and *Robert H. Elder,* for appellant.

*Graves, Kizer & Graves,* for respondents.

[1]Reported in 263 Pac. 190.

ASKREN, J.—Respondent McCarty is the widow of E. A. McCarty, deceased, who, for some years prior to his death, made advances of large sums of money to respondents Carey and wife, who were engaged in the logging business. In 1923, the Careys were indebted to McCarty, and as a consideration for past indebtedness, present and future advancements, they executed a mortgage on certain real estate in Idaho in his favor. At the time of the execution of the mortgage, the sum of $16,020 was advanced, but the mortgage provided that it should be

". . . security for the payment by the mortgagors to the said mortgagees of the sum above mentioned ($16,020), and any and all other indebtedness owing by the mortgagors or which may become due or owing by the mortgagors to the mortgagee during the life hereof."

Further advances were made from time to time, until there was due from the Careys the sum of $48,-243.34.

During this time, the Careys were logging for the appellant Herrick, and he claimed that they became indebted to him also for a large amount. Controversy having arisen between the Careys and Herrick, he brought suit against them in Idaho to recover the amount claimed due. As a part of the action, he caused a writ of attachment to be issued upon all the property of the Careys, including timber covered by the mortgage given to McCarty. Carey continued the logging of the timber, until Herrick began a suit to enjoin the operations and injunction issued. The suit named McCarty as well as the Careys defendants. After issue was joined, McCarty died and his wife was substituted in his stead. The parties then entered into an agreement settling all the controversies between themselves. The agreement is a long, involved contract and need not be set out. It settled all contro-

versies and released all parties. It was agreed that Herrick should take all the logs from certain timber and pay therefor the sum of six dollars per thousand feet, until he had paid an amount equal to the money due under the mortgage, if there were sufficient logs to do so.

Inasmuch as there was some question as to the exact amount due upon the mortgage, it was agreed, in the settlement contract, that this question should be left to arbitration. For this purpose, Judge H. H. Taylor of the district court of Idaho was selected. The portion of the settlement contract providing for this arbitration is as follows:

"(3)   The parties hereto agree that the balance due upon said mortgage shall be ascertained in the following manner:

"The said balance due shall be determined by Herman H. Taylor, a judge of the district court of the eighth judicial district of the state of Idaho, who for that purpose is hereby agreed upon as an arbitrator, and whose findings shall be final, conclusive and binding upon the parties.

"It is agreed that all of the parties hereto may introduce evidence in support of any claim as to the balance still due, and that the said Herman H. Taylor shall pass upon said matter both as to the facts and the law.

"It is understood and agreed that in submitting said matter that the parties of the second part and third part concede that certain moneys were paid for timber cut from said lands at the rate of $6 per thousand feet and claim the same was applied by agreement of John M. Carey and E. A. McCarty on indebtedness other than the amount borrowed when the mortgage was given.

"The said parties of the second part further agree that certain moneys were advanced subsequent to the date of said mortgage by E. A. McCarty, to the parties of the second part, which the parties of the third part claim should come within the terms of and be secured by said mortgage.

"The party of the first part claims that as a creditor such advances were subject to the claims of the said party of the first part and the matter to be determined is the balance due upon said mortgage as against the party of the first part, claiming as a creditor.

"It is also understood that the party of the first part claims that certain of said loans were advanced subsequent to an attachment on said timber, and that as against the party of the first part the same could not be claimed under the mortgage.

"It is also understood and agreed that the party of the first part claims that by the application of the payments made by Carey to McCarty subsequent to the date of said mortgage, the mortgage was as against creditors of the said Carey paid in full, notwithstanding the agreement of the parties to apply the money otherwise.

"It is understood that in the submission of said matter to arbitration the said party of the first part stands as a creditor of said Carey for the purpose of determining the balance due under said mortgage.

"All of the questions of fact as well as the questions of law involved are to be submitted to and determined by the said Herman H. Taylor, whether the claims of the parties are set forth as above or not. The amount of said mortgage is to be determined as of the 14th day of July, 1924, and if the hearing is not heard on said date the same shall, when heard, be determined as of that date. Upon the balance being determined, the same shall be paid by the payment by the party of the first part to the parties of the third part at the rate of $6 per thousand feet for all logs cut from said lands included in said mortgage as and when the same are delivered to the party of the first part. Such payments to be made by the party of the first part to the third parties every Monday upon the scale from the preceding week. A copy of such scale report to be furnished to the third parties, and the amount due to the third parties to be paid at the office of the Coeur d'Alene Mill Company at Coeur d'Alene, Idaho."

Thereafter, the logging operations were continued and logs to the value of $36,593.52 were received by Herrick. In the meantime, Judge Taylor was ap-

pointed to the supreme court of Idaho, but, under the suggestion, request, and approval of the parties, consented to perform the services of arbitrator.

On March 12, 1925, the attorney for the McCartys wrote the arbitrator, stating that he thought it best to have an order entered definitely setting the matter for hearing, and enclosed an order setting the cause for Monday, March 30, 1925. This was signed by Judge Taylor, and filed in the original cause of *Herrick v. Carey*. After hearing, the arbitrator made an award, contained in a letter to the attorneys, in which he found that the mortgage in question was valid, as far as Herrick's interest was concerned, only to the extent of the sum of $16,020, the figures expressed on its face, and, after computing payments made on account and interest on unpaid balances, found the total due of $10,331.49. The respondents' attorneys immediately wrote the arbitrator, calling attention to the fact that the computation of interest was about $1,700 short, and that, according to the arbitrator's attempted figuring, the amount should be $12,022.62. The arbitrator thereupon wrote another letter, explaining that the interest computation had been done by another under his direction, and acknowledging the correctness of the figures submitted by respondent, and placed the amount of the award under the mortgage at $12,022.62. This was on October 22, 1925.

Later, respondents' attorney prepared findings in the matter, which, although some objection was made by appellant's attorneys, were signed. However, these findings were signed, as the arbitrator testified, "not with the intention of making any change whatever in the award as between the McCartys and the Careys on the one side, and Herrick on the other, as to the amount that Herrick must pay on the mortgage." Two days after sending the proposed findings to the arbi-

trator, the attorney for respondents wrote him again, saying that he had been thinking the matter over and concluded that he was in error in suggesting that one of the awards should be filed in the cause, as he was convinced that the proceedings were simply a common law arbitration, and that therefore the award should be in triplicate and one copy thereof sent to each of the interested parties.

However, on December 30, the arbitrator made formal findings of fact, conclusions of law and an award which, so far as necessary to an understanding of the points involved herein, found that the amount due McCarty from Carey was $48,243.34, but that, as to Herrick, the mortgage was valid only as to the amount named therein, $16,020, less payments and accrued interest, or $12,022.62. The basis for concluding that the mortgage was valid only for the amount in figures, as expressed on its face, was set out as follows:

"For the purpose of deciding the question submitted to me for decision, to wit: the amount due upon the mortgage on July 14, 1924, the date of the submission, I have applied to the facts as found by me certain rules of law which I believe to be settled by the decisions of the courts. Those rules are as follows:

"First. A valid mortgage may be given to secure indebtedness existing at the time of its execution and also future advances agreed to be made to the mortgagor. The debt secured may be a fluctuating and unascertained debt, but it cannot exceed the amount of the debt as stated in the mortgage. *Weiser Loan & Trust Co. v. Comerford* (Idaho), 238 Pac. 515. On the authority of that decision and similar decisions of other courts, I hold that the mortgage in controversy specified a debt of $16,020, with interest thereon at the rate of 10% per annum, and that it secured the payment of that sum and of no other or greater sum."

The net result of such an award was to permit Herrick to have the $36,593.52 worth of logs upon a payment of $12,022.62.

The respondents, conceiving that the arbitrator had grossly misinterpreted the law which he applied to the question involved, brought this action seeking review by the court of Spokane county, where the Careys were residents. They alleged that the arbitration was a common law arbitration; that the arbitrator intended to decide the question according to law; that he found the facts correctly, but misconstrued the law, and prayed relief. The cause finally became at issue, and the main controverted facts which came before the court for decision were:

(1) Was the arbitration one at common law, or statutory under the law of Idaho?

(2) If the arbitration was at common law, was the award of such a form and character that it was reviewable by a court of equity?

(3) If reviewable by a court of equity, was there such a mistake by the arbitrator as to the law that the court was justified in arriving at a different conclusion?

After trial, the court determined that the arbitration was one at common law; that it was reviewable by the court, and that the arbitrator had made a mistake in interpreting the law applicable, and found that the amount due under the mortgage was $48,243.34, but that Herrick had only received $36,593.52 worth of logs, and entered judgment for that amount.

[1] The first question raised upon appeal centers around whether the court erred in holding this a common law arbitration. To determine this question, a few of the provisions of the Idaho statutes need be set out.

"Section 7428. Controversies Which May Be Submitted. Persons capable of contracting may submit to arbitration any controversy which might be the subject of a civil action between them, . . .

10—146 WASH.

"Sec. 7429. Submission to Be In Writing. The submission to arbitration must be in writing and may be to one or more persons.

"Sec. 7430. Entry of Submission. It may be stipulated in the submission that it be entered as an order of the district court, for which purpose it must be filed with the clerk of said court for a county where the parties, or one of them, reside. The clerk must thereupon enter in his register of actions a note of the submission, with the names of the parties, the names of the arbitrators, the date of the submission, when filed, and the time limited by the submission, if any, within which the award must be made. When so entered, the submission cannot be revoked without the consent of both parties. The arbitrators may be compelled by the court to make an award, and the award may be enforced by the court in the same manner as a judgment. If the submission is not made an order of the court, it may be revoked at any time before the award is made.

"Sec. 7433. Award. The award must be in writing, signed by the arbitrators, or a majority of them, and delivered to the parties. When the submission is made an order of the court, the award must be filed with the clerk, and a note thereof made in his register. After the expiration of five days from the filing of the award, upon the application of a party and on filing of an affidavit showing that notice of filing the award has been served on the adverse party or his attorney at least four days prior to such application, and that no order staying the entry of judgment has been served, the award must be entered by the clerk in the judgment book, and thereupon has the effect of a judgment.

"Sec. 7437. Revocation: Costs and Damages. If a submission to arbitration be revoked, and an action be brought therefor, the amount to be recovered can only be the costs and damages sustained in preparing for and attending the arbitration."

It should be noticed, at the outset, that there is nothing in the original agreement from which it can be inferred that the arbitration was to be statutory. It is

totally silent upon the question. Assuming that the matter is one capable of being submitted to statutory arbitration, the parties had the choice of either method —statutory or common law. The absence of any words indicating a statutory one would lend support to the belief that it was to be at common law. But, perhaps, a better way of determining the intention of the parties is to see whether the instrument itself provided for action according to the statute or contrary thereto.

Neither the arbitration papers nor the award were filed in court until after the action was commenced. Respondent urges that the failure to file the agreement for submission, until after the award, prevented the matter being one under the statute; for, since nothing was before the court, the arbitration lost one of the essentials of a statutory arbitration, and perhaps the distinguishing feature between it and a common law arbitration, that the proceedings were not under the control of the court.

We need not determine this important question, as there is a provision in the agreement to arbitrate that sufficiently demonstrates, to our minds, that this was one at common law. We have heretofore set out the arbitration agreement providing that the findings of the arbitrator shall be "final, conclusive, and binding upon the parties." If the parties had intended that this was to be statutory, they knew that it could not be final and conclusive, but that it could be vacated upon numerous grounds set forth in the statute, as well as modified or corrected for many more. The parties could not, by stipulation, deprive the court of its power to set aside a statutory award for any or all of the grounds provided in the statute. *Kreiss v. Hotaling,* 96 Cal. 611, 31 Pac. 740; *Joshua Hendy Machine Works v. Gray,* 9 Cal. App. 610, 99 Pac. 1110; *Cochrane v. Forbes,* 257 Mass. 135, 153 N. E. 566. Nor

should we assume that the able counsel for either side ever intended so to stipulate.

Some contention is made by appellant that the letter from respondents' attorney of November 25, 1925, and other acts indicate the belief of the parties, and their intent, to have this a statutory arbitration. We need go no further to decide this question than to examine the agreement itself. If it fail to provide for statutory arbitration and contains provisions contrary to the statute, we shall not legislate the parties under it. What they have failed to do, the court can not do for them.

[2] The next question naturally arising is this: Was there such a mistake by the arbitrator that a court will review his action?

Almost universal authority holds that arbitrators are, when acting under unlimited authority, such as granted in this case, final judges of both the law and the facts, and that no review will lie for a mistake in either. They may, if they wish, disregard the law entirely and decide issues according to their own notion of what is right or equitable between the parties. An exception to this rule, however, is well grounded in our jurisprudence. If the arbitrator recite in his award that, in determining the result, he followed a certain method or a certain rule of law, it will be presumed that it was so set out that, if there is error, it may be corrected. For it becomes apparent that, if there is a mistake in applying the law or the facts under the method used and set out, the award is not what the arbitrator intended to make. 2 R. C. L., 392; 2 Story Eq. Jurisprudence (13th ed.), 792. See, also, *Fudickar v. Guardian Mutual Life Ins. Co.*, 62 N. Y. 392; *Johnson v. Noble*, 13 N. H. 286. The rule is well stated in 5 Corpus Juris, p. 184, § 470:

"Sec. 470. Effect of Intent to Follow the Law. Statement of Rule. If it is clearly shown that the ar-

bitrators intended to decide according to the law, and it also plainly appears that they mistook or misconstrued the law, the award must be held to operate as a miscarriage of the intention of the arbitrators, and, on this ground, the award will be set aside. 'If erroneous in law, it follows that it is not what the arbitrator intended.' In applying the rule it is essential that the intent of the arbitrators to decide according to law should plainly appear. And where the reasons of the award are not shown, there is no means of knowing whether or not the arbitrators intended to decide according to law. Furthermore it is very generally held that if the arbitrators mistake the law in a doubtful point, the award for this reason will not be set aside even though the court would have decided the law differently. 'The error of law, which will avoid an award must be very clear, and such as has plainly conducted the judgment of the arbitrator to a wrong conclusion, one but for which he must have made an award, different in its substantial results.' ''

An examination of the award discloses that the arbitrator found the proper sums of money due under the mortgage from the Careys to McCarty, but held that, under the law of Idaho, stated by the supreme court of that state in *Weiser Loan & Trust Co. v. Comerford,* 41 Idaho 172, 238 Pac. 515, the mortgage could be security for $16,020 only, and interest. Therefore, it clearly appears that this is a case which falls within the exception; for the arbitrator expressly conditions his award upon the law as construed in a specific decision, and others similar.

[3] The remaining question, then, left for us to determine, is whether the arbitrator correctly construed the law, for if he did not, then it follows that the award is not the one he intended to make, and should be corrected.

Remembering that the mortgage in this case recited that the mortgagors, in

".   .   . consideration of the sum of $16,020 to them in hand paid,'' mortgaged certain property "as se-

curity for the payment by the mortgagors to the said mortgagee of the sum above mentioned and any and all other indebtedness owing by the mortgagors or which may become due and owing by the mortgagors to the mortgagee during the life hereof,"

let us see whether the case cited by the arbitrator has any bearing upon the point here in controversy. In that action, Comerford and wife signed a note and mortgage in favor of the plaintiff in the sum of $15,-000. Comerford, alone, signed also a chattel mortgage to secure the same note. At the time of the execution of the note and mortgage, Comerford entered into a written agreement with the plaintiff, in which, after, setting out the fact that he was then indebted to the plaintiff, and would thereafter be borrowing varying amounts on short time notes, and incurring other obligations to the plaintiff, and being desirous of keeping plaintiff secured, provided that the amount due on the $15,000 note should be the sums which he owed plaintiff, or might thereafter become obligated to pay, whether by renewal notes or new loans, and that, if any indebtedness was not paid when due, the plaintiff might declare all of the indebtedness due, not exceeding the amount due on the mortgage, and foreclose for each amount. Comerford died, and later an action was instituted against his wife to foreclose both mortgages. The evidence showed that, at the time of the execution of the mortgages, Comerford was indebted in the sum of $6,000, and thereafter received additional advances aggregating $34,500, for which he executed new notes and made payments aggregating $26,500. At his death he thus owed $14,000, represented by five notes, all executed more than two years after the date of the mortgage. To recover the $14,000 represented by these notes, the foreclosure of the mortgage was sought.

Many defenses were urged, among them being the

contention that, since the real estate mortgage signed
by the wife contemplated a debt due two years from
its execution, and since she was not a party to the
agreement for future advances, it was without consid-
eration to her, save and except the $6,000 due at the
time of the execution of the mortgage.  Supplement-
ing this contention, she urged that, as to the chattel
mortgage, the plaintiff had received from the deceased
at least $15,000 prior to the execution of the notes for
the later advances, and that, therefore, such advances
were in excess of the debt limit of the mortgage.  The
court held that the plain intent of the agreement signed
by the husband was that the mortgages should remain
a lien to secure the floating indebtedness up to the sum
of $15,000, and that, since the agreement was not for
a larger sum than that named in the mortgage, and did
not attempt to extend the lien to debts not originally
intended, the chattel mortgage was security for the
sum due, $14,000.

As to the real estate mortgage, the court held that
the only contract the wife was a party to—the mort-
gage and note—contemplated a debt due in two years
from its execution.  That none of the advances were
so made, but were made on demand notes, and said:

"Not being made in accordance with the terms of
the debt she authorized, nor in accordance with any
agreement to which she was a party, or in which she
acquiesced, the debts which were created by the hus-
band are not secured by the real estate mortgage."

However, the court in making general observations
as to the question of the extent to which a mortgage
stands as security for past and future advances as well
as floating indebtedness, used the following language:

"The rule is well settled that it is not necessary that
a mortgage express on its face that it is given to secure
future advances; It may describe as the debt secured
a specific sum, leaving the true nature of the transac-

tion to be shown by parol proof, and it will then be security for a debt including future advances, to the amount named, if such is the agreement of the parties. 1 Jones on Mortgages (7th ed.), § 374; Jones, Chattel Mortgages (4th ed.), § 96; *Du Bois v. First National Bank,* 43 Colo. 400, 96 Pac. 169; *Westheimer v. Goodkind,* 25 Mont. 90, 60 Pac. 813; *Shirras v. Craig,* 7 Cranch, 34, 3 L. Ed. 260; *Hendrix v. Gore,* 8 Ore. 406; *Tully v. Harloe,* 35 Cal. 302, 95 Am. Dec. 102. Nor is the lien of the mortgage in such case necessarily limited to the first advances equalizing the sum specified. *Where the parties so intend, a mortgage conditioned for the payment of future advances, in an amount specified, has been held to cover the balance, not exceeding the sum specified,* remaining unpaid of a total amount of advances larger than the sum named in the mortgage. (*Lawrence v. Tucker,* 23 How. 14, 16 L. Ed. 474; *In re York,* Fed. Cas. No. 18138; *Courier-Journal Printing Co. v. Schaefer Meyer Brew. Co.,* 101 F. 699, *Job Printing Co. v. Schaefer Meyer Brew. Co.,* 101 F. 699, 41 C. C. A. 614); and where the parties so intend, a mortgage for a specified sum not expressed to consist of future advances, is thus a continuing security for a floating balance of indebtedness up to the specified amount, even though the total advances may have exceeded that amount and been in part repaid. *Bank v. Finch,* 3 Barb. Ch. (N. Y.) 293, 49 Am. Dec. 175; note Ann. Cas. 1913C, 564.''

We have italicized the portion of the paragraph upon which the arbitrator laid special stress, and which he thought compelled a holding that a mortgage is good for future advances not exceeding the amount specified in the mortgage.

Respondent has insisted that these remarks of the court were purely *obiter dicta* and not in any sense necessary to the decision, and therefore not controlling. We need not here inquire whether they were such, for it is plain that, if they be of the very essence of the decision, they do not, in any sense, hold that a mortgage is good only to the extent of the money

stated in the consideration as being in hand paid, but that such a mortgage is good to "cover the balance, not exceeding the sum specified, remaining unpaid of a total amount of advances larger than the sum contained in the mortgage."

The Comerford mortgage specified the limit of liability as $15,000—in this mortgage the sum was specified as being "the sum of $16,020 . . . and any and all other indebtedness owing . . . or which may become due or owing . . . during the life hereof." Therefore, under the decision of the Idaho court, this mortgage was good for whatever amount it provided for, and could not be restricted to the amount actually advanced at the time, when it plainly recited that it was security for past and future advances. This holding of the Idaho court, and the construction we have placed on it, is in accord with the overwhelming weight of authority. 1 Jones, Mortgages (6th ed.), 374; Jones, Chattel Mortgages (3d ed.), 96; 19 R. C. L., § 167-168.

41 Corpus Juris, § 349, p. 457, states the rule:

"A mortgage may be given as security for an unliquidated claim, or for whatever sum may be due from the mortgagor to the mortgagee at a given time, or for all and every kind of indebtedness which may exist between the parties or be thereafter contracted, without any specification or limitation as to amount; and in such cases it may be enforced for whatever sum the holder of the mortgage may prove to be due and payable."

See, also, *Hurd v. Robinson,* 11 Ohio St. 232; *Michigan Ins. Co. v. Brown,* 11 Mich. 265; *Curtis & Lane v. Flinn,* 46 Ark. 70; *Lamoille County Sav. Bank v. Belden,* 90 Vt. 535, 98 Atl. 1002.

[4] One other question deserves mention in this opinion. The Careys made payments of certain sums of money to the McCartys. The arbitrator held that,

after Herrick had issued an attachment in the Idaho proceedings, the mortgagors and mortgagee were without power, by agreement between themselves, to apply such sums on anything but the mortgage debt. This view of the law is equally erroneous. There is no privity between an attaching creditor and one who owes his debtor, that allows him to direct or have control over the payment of money by that person. The one who makes payment has the right to designate on which debt it shall be applied. If he fail, then the creditor may make application. If both fail, then the law makes application, under well known rules. But we know of no authority preventing the creditor and debtor from agreeing among themselves as to the application of payments. The most favorable position the attaching creditor could hold would be one equal to his debtor. If his debtor could not apply the payments as he wished, unless the payor failed to designate, how can he have a greater power? The rule is stated in 30 Cyc. as follows:

"The exercise of the right of appropriation of payments belongs exclusively to the debtor and creditor and no third person can control or be heard for the purpose of compelling a different appropriation from that agreed upon by them. . . ." 30 Cyc. 1250.

See, also, *Gordon v. Hobart,* 10 Fed. Cas. 787; *Kelso v. Russell,* 33 Wash. 474, 74 Pac. 561; *Puget Sound State Bank v. Gallucci,* 82 Wash. 445, 144 Pac. 698, Ann. Cas. 1916A 767; *Bross v. McNicholas,* 66 Ore. 42, 133 Pac. 782; *Wyandotte Coal & Lime Co. v. Wyandotte Pav. & Const. Co.,* 97 Kan. 203, 154 Pac. 1012.

Other questions are raised, including two assignments of error, relating to the introduction of evidence, as to whether the arbitration was statutory and was so considered by the arbitrator. A careful examination of them convinces us that there was no reversible error, even assuming that the proposed evidence

should have been admitted, for our conclusion upon the point would not be different with this added evidence. To set out further points and the argument thereon would extend this opinion beyond due length. We must content ourselves with saying that we find no ground for reversing the judgment of the trial court. It is therefore affirmed.

MACKINTOSH, C. J., MAIN, HOLCOMB, and FULLERTON, JJ., concur.